**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George Jerry RUMINER and Ada Ruminer, Defendants-Appellants.**

**Nos. 84–1115, 84–1116.**

United States Court of Appeals,
Tenth Circuit.

March 12, 1986.

Thomas W. Burns, Tulsa, Okl., for defendants-appellants.

Keith Ward, Asst. U.S. Atty. (Layn R. Phillips, U.S. Atty., and Gerald Hilsher, Asst. U.S. Atty., Tulsa, Okl., were also on brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and CARRIGAN, District Judge.*

HOLLOWAY, Chief Judge.

In a bench trial after a jury was waived, defendants George Jerry Ruminer and Ada Lee Ruminer were convicted of conspiracy to manufacture amphetamine,[1] the manufacture of amphetamine,[2] and possession of amphetamine with the intent to distribute.[3] Defendant George Jerry Ruminer was also convicted on six counts of using a telephone to facilitate the manufacture of amphetamine.[4] The evidence on commission of the offenses was submitted to the court by way of written stipulation. In this direct appeal from their convictions, the defendants contend that the trial court erred in denying their motion to suppress evidence obtained through an unlawfully executed search warrant. The defendants further contend that the trial court erred and abused its discretion in considering for purposes of sentencing certain statements made by the defendants during plea discussions.

I

*The execution of the search warrant*

After conducting an evidentiary hearing on the motion to suppress, the trial court found, *inter alia*, that "the law en-

---

* The Honorable Jim R. Carrigan of the United States District Court for the District of Colorado, sitting by designation.

1. 21 U.S.C. §§ 841(a)(1) and 846 (1982).

2. 21 U.S.C. § 841(a)(1) (1982) and 18 U.S.C. § 2 (1982).

3. 21 U.S.C. § 841(a)(1) (1982) and 18 U.S.C. § 2 (1982).

4. 21 U.S.C. §§ 841(a)(1) (1982) and 843(b) (1982).

forcement officers waited a reasonable time, under the circumstances, before entering the house (approximately 5 to 10 seconds)." Specifically, the trial court found that the search warrant was executed August 5, 1983, at approximately 11:15 p.m., at the defendants' residence; that the defendants were in the northeast corner of the house at the time; and that the lights were out in the house when two agents approached the front door, knocked on the storm door, and announced, "Police officers—we have a search warrant." The trial court also found that at about the same time the knock and announce occurred at the front door, officers at the bedroom window saw a form run out of the bedroom. Upon seeing the movement in the bedroom, the officers announced themselves and thrust a gun through the window on the defendant George Jerry Ruminer. Upon hearing this commotion, the agents at the front door broke the glass on the storm door and forcibly entered through the door.

If the record clearly establishes the defendants' contention that the executing officers failed to announce their authority and purpose before forcibly entering the dwelling, and that no exigent circumstances were shown, the evidence seized must be suppressed as the fruit of an unlawful search. *See Sabbath v. United States,* 391 U.S. 585, 586, 589, 88 S.Ct. 1755, 1757, 20 L.Ed.2d 828 (1968); *Miller v. United States,* 357 U.S. 301, 313, 78 S.Ct. 1190, 1197, 2 L.Ed.2d 1332 (1958); *see also United States v. Baker,* 638 F.2d 198, 202 (10th Cir.1980). Section 3109 [5] provides:

> The officer may break open an outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Section 3109 requires notice in the form of an express announcement by the officers of their purpose and authority for demanding admission, although "the burden of making an express announcement is certainly slight." *Miller,* 357 U.S. at 309, 78 S.Ct. at 1195; *see United States v. Remigio,* 767 F.2d 730, 732 (10th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 535, 88 L.Ed.2d 465 (1985). This requirement is grounded in the Fourth Amendment [6] and serves several purposes: (i) it decreases the potential for violence; (ii) it protects the privacy of the individual by minimizing the chance of forcible entry into the dwelling of the wrong person; and, (iii) it prevents the physical destruction of the property by giving the occupant time to voluntarily admit the officers. W. LaFave & G. J. Israel, *supra* at 230–31; *see Remigio,* 767 F.2d at 732;.

When reviewing the denial of a motion to suppress we must accept the findings of fact by the trial court unless they are clearly erroneous. *United States v. Gay,* 774 F.2d 368, 375 (10th Cir.1985); *United States v. Ortiz,* 445 F.2d 1100, 1103 (10th Cir.), *cert. denied,* 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971). The credibility and weight to be attached to the evidence are determined by the trial court. *United States v. Pappas,* 735 F.2d 1232, 1233 (10th Cir.1984); *United States v. Walker,* 524 F.2d 1125, 1129 (10th Cir.1975). Moreover the evidence presented at the suppression hearing and the trial must be considered in the light most favorable to the Government. *Gay,* 774 F.2d at 375.

There was credible testimony that the officers announced their authority and purpose before forcibly entering the house. (Tr. II, 45, 54, 65–66, 71, 80). The record also supports the trial court's finding that the officers waited approximately five to ten seconds before entering. (*Id.*). "The time that § 3109 requires officers to wait before they may construe no response as a denial of admittance ·depends largely on

---

5. 18 U.S.C. § 3109 (1982).

6. *See Baker,* 638 F.2d at 202 n. 7; *see also* W. LaFave & G. J. Israel, 1 Crim.Prac. & Pro. § 3.4(h), at 230 n. 101 (1984).

factual determinations made by the trial court." *United States v. Davis*, 617 F.2d 677, 695 (D.C.Cir.1979), *cert. denied*, 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980); *United States v. Jackson*, 585 F.2d 653, 662 (4th Cir.1978); *see also Ortiz*, 445 F.2d at 1102 n. 2. Courts have upheld the validity of searches where the delay was one minute,[7] thirty seconds,[8] fifteen to twenty seconds,[9] ten seconds,[10] and forcible entry immediately after announcement has been upheld where there was likelihood of an attempt to escape, to resist, or to destroy evidence. *See Jackson*, 585 F.2d at 661–62. A perusal of the cases shows the futility of fixing a hard and fast rule. The rule is not an inflexible one.

The trial court found that the officers waited some five to ten seconds before entering the dwelling. The officers at the

window were justified in acting in the manner in which they did because they observed a figure leaving the room.[11] Such a person could have left the room to obtain a weapon or to destroy evidence. The trial court was confronted with conflicting testimony and chose to believe the officers. *See Baker*, 638 F.2d at 202. Given the testimony placed before him, we do not believe that the trial court erred in concluding that the officers did not violate § 3109 in the exigencies confronting them.

## II

### *The sentencing proceedings*

■ The defendants further contend that the trial court erred in considering certain statements made by the defendants during plea discussions in setting the sentences.[12]

7. *Martin v. United States*, 341 F.2d 576 (5th Cir.1965).

8. *United States v. Ciammitti*, 720 F.2d 927, 933 (6th Cir.1983), *cert. denied*, 466 U.S. 970, 104 S.Ct. 2342, 80 L.Ed.2d 816 (1984); *United States v. West*, 328 F.2d 16, 18 (2d Cir.1964).

9. *United States v. Aldrete*, 414 F.2d 238, 239 (5th Cir.1969) (per curiam) (officers saw two figures rushing to rear of house).

10. *United States v. Wysong*, 528 F.2d 345 (9th Cir.1976) (likelihood of destruction of narcotics); *United States v. Allende*, 486 F.2d 1351, 1353 (9th Cir.1973), *cert. denied*, 416 U.S. 958, 94 S.Ct. 1973, 40 L.Ed.2d 308 (1974).

11. Generally officers are not required to announce at *every* place of entry; one proper announcement under § 3109 is usually sufficient. *See United States v. Bustamante-Gamez*, 488 F.2d 4, 10 (9th Cir.1973), *cert. denied*, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974); *cf. Remigio*, 767 F.2d at 732 n. 2.

12. George Jerry Ruminer received a four-year sentence on each of the first two counts. The sentence imposed under count two included a special parole term of four years, which was to run consecutively to the sentence imposed under count one. The sentence under count three was suspended, the defendant being placed on probation for a period of four years. The probation term was to run concurrently with the sentence imposed under count two. The defendant was also placed on a special parole term of four years, which was to run concurrently with the special parole term imposed

under count two. The trial court suspended the sentence under counts four through nine, placing the defendant on probation for a period of four years. This term was to run concurrently with the sentence of probation imposed under count three. (Tr. I, 69–70).

As to Mr. Ruminer, the statutory scheme provided the following ranges of permissible sentences. For counts one through three, the maximum sentence was imprisonment for five years and a $15,000 fine. 21 U.S.C. § 841(b)(1)(B) (1982) (amended in 1984). For first offenders, the statute required a special parole term of at least two years. 21 U.S.C. § 841(b)(1)(B) (1982) (amended in 1984). The maximum sentence under counts four through nine was imprisonment for four years and a $30,000 fine. 21 U.S.C. § 843(c) (1982) (amended in 1984).

Ada Lee Ruminer received a three year sentence under counts one, two and three. The sentence under count three was to run concurrently with the sentence imposed under count two. The sentences under counts two and three were to run concurrently with the sentence imposed under count one. She also received a special parole term of two years on each count, with the term under count three to run concurrently with that imposed under count two. She was also placed on a special parole term of two years on each count, with the term under count three to run concurrently with that imposed under count two. (Tr. I, 69).

As to Mrs. Ruminer, the statute provided a maximum sentence, on each count, of imprisonment for five years and a $15,000 fine. 21 U.S.C. § 841(b)(1)(B) (1982) (amended in 1984). A special parole term of at least two years was also required. 21 U.S.C. § 841(b)(1)(B) (1982) (amended in 1984).

In its Post-trial Sentencing Memorandum, the Government argued that a defendant's lack of cooperation with law enforcement officials should be taken into account by the trial court in assessing the appropriate sentence. Finding the Government's argument persuasive, the trial court did consider the fact that the defendants failed to cooperate with law enforcement officials by suggesting false leads. (Tr. III, 15).

We believe the Supreme Court's decision in *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1982), is controlling. In *Roberts*, the Court held that a trial judge may properly consider a defendant's refusal to cooperate with the Government by refusing to name others involved in the criminal activities, such as drug suppliers. *Id.* at 554–55 n. 3 and 558, 100 S.Ct. at 1360–61 n. 3 and 1363. The defendants here not only refused to cooperate with law enforcement officials, but also suggested false leads. Such affirmative misconduct on the part of the defendants wasted valuable law enforcement resources expended in following-up the false leads. (Post-trial Sentencing Memorandum at 9, Tr. I at 66; Government argument at sentencing, Tr. III at 14). These facts were not disputed by defense counsel.

Few facts available to a sentencing judge are more relevant to "the likelihood that [a defendant] will transgress no more, the hopes that he may respond to rehabilitative efforts to assist with a lawful future career, [and] the degree to which he does or does not deem himself at war with his society." *United States v. Grayson*, 438 U.S. 41, 51, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582 (1978) (quoting *United States v. Hendrix*, 505 F.2d 1233, 1236 (2d Cir.1974)).[13] "Unless his silence is protected by the privilege against self-incrimination ... the

criminal defendant no less than any other citizen is obliged to assist the authorities." *Roberts*, 445 U.S. at 558, 100 S.Ct. at 1363.[14] The defendants here shirked their responsibilities "of community life that should be recognized before rehabilitation can begin." *Id.* Moreover, the defendants' conduct here was more egregious than the defendant's conduct in *Roberts*. These defendants not only generally failed to cooperate with officials, but also suggested false leads in a purposeful attempt to hinder the investigation. We are not faced with the problem of drawing inferences from an ambiguous silence. *See id.* at 563, 100 S.Ct. at 1365 (Brennan, J., concurring). Instead there was affirmative misconduct here which is relevant to the sentencing judge in his duty to fix the appropriate sentence.

The defendants contend, however, that their misconduct occurred during plea discussions and that Fed.R.Evid. 410 does not permit the use of the statements against them in any criminal proceeding. Rule 410 makes statements made during plea discussions inadmissible if used against the defendant. The Government conceded at sentencing that the defendants' statements suggesting false leads were made during plea discussions; however, the Government maintains that Fed. R.Evid. 1101(d)(3) excludes the application of the Federal Rules of Evidence at the sentencing stage of a criminal proceeding, generally; and in these circumstances. We agree. Rule 1101(d)(3) is clear; it expressly excludes the application of the Federal Rules of Evidence (other than with respect to privileges) at "sentencing."

The defendants also rely on Fed.R. Crim.P. 11(e)(6). Rule 11(e)(6) is essentially identical to Rule 410.[15] It also provides

---

**13.** In his argument before the trial court, defense counsel agreed that when a defendant cooperates with officials such conduct is appropriate for consideration by a sentencing judge. (Tr. III, 18).

**14.** Defense counsel conceded at the sentencing hearing that there was no custodial interrogation or invocation of any Fifth Amendment rights. (Tr. III, 21, 24).

**15.** There is no legislative reason given for duplicating the rules. At least one commentator suggests that the rules should be treated as one. 10 J. Moore & H. Bendix, Moore's Federal Practice § 410.01[1.–1] (2d ed. 1981). Moreover, the Advisory Committee Notes to the 1974 amendments on Rule 11(e)(6) state that the rule is taken from Rule 410. For a discussion on the unique legislative history of the two rules, see

that statements made during plea discussions are inadmissible against the defendant in any criminal proceeding. However, unlike the Federal Rules of Evidence, the Federal Rules of Criminal Procedure contain no counterpart to Rule 1101(d)(3). There thus appears to be an inconsistency between the two rules.

The provision defining the scope of the Federal Rules of Criminal Procedure is found in Rule 1. Rule 1 provides "[t]hese rules govern the procedure in all criminal proceedings...." We agree with the Fifth Circuit that the phrase "all criminal proceedings" as used in Rule 1 includes "all possible steps in the criminal case from its inception to judgment and sentence." *United States v. Choate*, 276 F.2d 724, 727 n. 7 (5th Cir.1960). Rule 11(e)(6) also contains its own scope provision. The effect of Rule 11(e)(6) is that evidence of "any statement made in the course of plea discussions" is not admissible "in any civil or criminal proceeding...." However, the Advisory Committee Notes to the 1979 amendments to the rule attempt to limit the scope provision of Rule 11(e)(6) to align it with its evidentiary counterpart, Rule 410. In clearing up an ambiguity, which has no relevance here, in Rule 11(e)(6) the committee noted in the comments on the 1979 amendments that "[n]o change is intended with respect to provisions making evidence rules inapplicable in certain situations. *See, e.g.,* Fed.R.Evid. 104(a) and 1101(d)."

We find the Advisory Committee Notes to Rule 11(e)(6) persuasive, but we rest our affirmance more squarely on the specific principles governing criminal sentencing in the United States District Courts as clearly articulated by Congress and the Supreme Court. Congress has directed that:

[N]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

*United States v. Robertson*, 582 F.2d 1356 (5th

18 U.S.C. § 3661 (formerly 18 U.S.C. § 3577). It is thus permissible for a district judge to consider information in sentencing that would be inadmissible for the purpose of determining guilt.

For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender. His past may be taken to indicate his present purposes and tendencies and significantly to suggest the period of restraint and the kind of discipline that ought to be imposed upon him.

*Pennsylvania v. Ashe*, 302 U.S. 51, 55, 58 S.Ct. 59, 60, 82 L.Ed. 43 (1937); *see Smith v. United States*, 551 F.2d 1193, 1196 (10th Cir.), *cert. denied*, 434 U.S. 830, 98 S.Ct. 113, 54 L.Ed.2d 90 (1977). The fundamental sentencing principle that "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come" [*Grayson*, 438 U.S. 41, 50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978), quoting *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) ] rests upon the role of the sentencing judge in the federal system.

The Supreme Court in discussing the function of a sentencing judge has stated:

A sentencing judge ... is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.

*Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949).

Cir.1978) (en banc).

Thus, the sentencing judge had the duty and authority to consider all relevant factors, both mitigating factors favoring lesser punishment and those unfavorable to the defendants. We are convinced that the prohibition of Rule 11(e)(6)(D) of the Rules of Criminal Procedure was not intended to apply to the sentencing stage of a trial. Moreover, the intent of Congress is clear: the sentencing judge has the authority to consider a wide range of sources and types of information in determining a proper sentence, *see* 18 U.S.C. § 3661 and F.R.E. 1101(d)(3), subject to constitutional limitations and those imposed by rules and decisions. *E.g., Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927) (a plea of guilty which is permitted to be withdrawn may not be used in evidence against a defendant permitted to enter a later plea of not guilty). We hold that the trial court did not err here in his conclusion that he should give "reasonable consideration" (Tr. III at 20), in the sentencing determinations made, to the defendants' refusal to cooperate with the Government.

AFFIRMED.