PUBLISH

———

UNITED STATES COURT OF APPEALS

**Filed 4/16/96**     FOR THE TENTH CIRCUIT

———

UNITED STATES OF AMERICA,              )
                                       )
    Plaintiff-Appellee,              )
                                       )
v.                                     )     No. 95-4150
                                       )
MARIO MEDINA-ESTRADA,                  )
aka Mario Estrada-Medina,              )
                                       )
    Defendant-Appellant.             )

———

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 94-CR-140)

———

Bruce C. Lubeck (Scott M. Matheson, Jr., United States Attorney
with him on the brief), Assistant United States Attorney, Salt
Lake City, Utah, for appellee.

Herschel Bullen, Salt Lake City, Utah, for appellant.

———

Before **ANDERSON, BARRETT and MURPHY**, Circuit Judges.

———

**BARRETT**, Senior Circuit Judge.

———

Mario Medina-Estrada (Medina-Estrada) appeals his sentence entered following a jury trial wherein he was found guilty of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

Facts

On September 7, 1994, Medina-Estrada was charged with distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Medina-Estrada waived prosecution by indictment and entered a plea of not guilty on September 12, 1994. Pursuant to plea negotiations, Medina-Estrada changed his plea to guilty on December 8, 1994.

At his change of plea hearing, Medina-Estrada, under oath and with counsel present, pled guilty to knowingly and intentionally distributing in excess of 100 grams of methamphetamine. (ROA, Vol. II at 8-9). As part of his guilty plea, Medina-Estrada signed a Statement in Advance of Plea of Guilty. In paragraph 14 of the statement, Medina-Estrada averred that:

14. I understand the facts below will be included in the Presentence Report, and state that said facts are true and correct and that such facts may be used in determining the factual basis for the plea and in calculating the appropriate sentence in this case:
(a) The Drug Enforcement Administration was using the services of a confidential informant [CI] [Luis Sanchez] who told the DEA agents he knew defendant.
(b) At the request of the DEA, the CI asked defendant if he could obtain methamphetamine. Defendant said he could. The CI and defendant agreed that the price would be $9,200.00 for a pound and $4,700.00 for a half pound of methamphetamine.
(c) On August 24, 1994, defendant called the CI and

-2-

said that he could get the methamphetamine that day and invited the CI to come to his residence. DEA monitored the meeting and observed the CI go to defendant's residence. Prior to entry, DEA put a listening device on [CI] and searched him and his vehicle. DEA agents overheard defendant make a phone call wherein defendant asked someone to bring the stuff over.

(d) Two men arrived and gave defendant a package containing what appeared to be methamphetamine to the CI. The CI and defendant went to the CI's automobile ostensibly to obtain the money to pay for he methamphetamine, which defendant said was only a half pound.

(e) The CI gave a signal and DEA agents arrived. Defendant fled as the DEA agents arrived. The methamphetamine was left in the vehicle where DEA recovered it. It has proven to be, after laboratory analysis, 138.9 grams (approximately 5 ounces) of 81% pure methamphetamine.[1] DEA agents chased defendant on foot and apprehended him. The other two men who arrived were not apprehended and their identities are not known.

(ROA, Supp. Vol. I, Tab 26 at 4-5) (footnote added).

On March 2, 1995, Medina-Estrada appeared for sentencing on his guilty plea after having been interviewed by the probation department. Based upon a dispute regarding the anticipated sentence and the recommendations of the presentence report, the district court allowed Medina-Estrada to withdraw his guilty plea and permitted his counsel to withdraw. Trial was then set for April 20, 1995, and new counsel was appointed.

At trial on April 21, 1995, Medina-Estrada testified that: he met Luis Sanchez (Sanchez) through a friend, Miguel, who lived in

---

[1] After trial, Medina-Estrada had the methamphetamine independently tested and the result was 11% pure. To avoid unnecessary argument, the government stipulated on August 17, 1995, that the methamphetamine was less than 80% pure for sentencing purposes. (ROA, Vol. VI at 3-4).

the same apartment building, a week or so before his arrest; he had never been involved with or sold drugs; Sanchez had told him he made false I.D.'s and false driver's licenses; Sanchez had told him that he would get a free false I.D. if he found others interested in buying false I.D.'s; he had found two people who wanted false I.D.'s and made arrangement for them to come to his apartment on August 24, 1994; he had waited in another room while Sanchez talked to the other two men; he went outside to find Sanchez when Sanchez signaled him to come over and get in his car with him; he got in the car to talk to Sanchez; and he got out of the car when Sanchez got out and opened the trunk. (ROA, Vol. V at 116-124). He testified that he ran from the DEA agents because he had outstanding traffic tickets, including one for driving under the influence in Salt Lake City, Utah, and he was scared.[2] Id. at 124. Medina-Estrada testified that after he was apprehended Officer Sharp asked another officer for drugs and forcibly put a fistful of drugs into Medina-Estrada's pocket. Id. at 125-26. Finally, Medina-Estrada denied speaking with Detective Russell after he was arrested regarding the drug transaction. Id. at 126-27.

In rebuttal, the government presented the testimony of Officer Sharp and Detective Russell. Officer Sharp testified that he did not place any controlled substances in Medina-Estrada's pocket.

---

[2] Medina-Estrada admitted that he was in the United States illegally at the time of his arrest. (ROA, Vol. V at 121).

<u>Id</u>. at 145. Detective Russell testified that Medina-Estrada admitted the drugs were his and that he was going to sell them to Sanchez. <u>Id</u>. at 150.

Following the jury trial, Medina-Estrada was found guilty of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). On May 1, 1995, the government requested that Medina-Estrada receive a two level enhancement of his offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1 because he committed perjury at trial.

At sentencing on August 17, 1995, the district court found conclusively that Medina-Estrada committed perjury and enhanced his offense level two points from 26 to 28. In making its decision, the district court stated:

> [T]he Court finds specifically that the defendant committed perjury and should receive two points for having committed perjury. It is inescapable. The defendant either committed perjury before me when he pled guilty, . . . it was under oath and convinced the Court that there was a factual predicate for the offense he was going to plead to. That was under oath. Then he at trial said something 180 degrees different.
>
> And, in addition, he talked to the probation officer during the preparation of the first presentence report before the withdrawal of the plea in which he again admitted having been involved in the drug deal. So you had one admission under oath in front of me and you had a second one admitting to it in the context of the preparation of the pretrial sentence report and that was in front of a probation officer. You had a third time, as I recall, when he admitted it to a police officer at the scene which was put in in rebuttal testimony at the trial. And then you have his trial testimony which was again under oath. So I don't have any legal question factually in my mind that he committed perjury.

-5-

Mr Bullen brought up an interesting point on whether it [Medina-Estrada's statement in his plea of guilty, later withdrawn] is excluded and I think that all the Tenth Circuit case [United States v. Acosta-Ballardo, 8 F.3d 1532 (10th Cir. 1993)] says is that it may not be used as admissible evidence for impeachment at trial. That is the limit of the holding of that case. It is an argument whether it extends to a finding of perjury at sentencing like this, and if I felt bound by that case or by the rule of criminal procedure or the rule of evidence . . . 410. Then I would clearly go with the rule, but I am convinced that the language at the end of Rule 11(e)(6) is informative on what the people drafting this were trying to say. And this is in my view a criminal proceeding for perjury. It happens to be in the context of a sentencing, but even under the guidelines, perjury is a form of obstruction of justice, and I am entitled to find it or not based on the facts which I need to find are by a preponderance of the evidence. And if under these circumstances I can't rely on the very thing that was done in front of me under oath, then I don't see much sense in the rules. So I am going to construe the rule in a way that make sense in that way and I think it is compatible with the language of the rule itself.

(ROA, Vol. VI at 18-19).

The district court then sentenced Medina-Estrada to 87 months imprisonment, the bottom of the guideline range for an offense level of 28 and criminal history category II. In sentencing Medina-Estrada, the district court stated:

The issue we just discussed on perjury I felt duty bound by the system to find perjury because not only do I find perjury in my own assessment by a preponderance of the evidence, but I find it beyond any reasonable doubt. And I feel very strongly that that finding needs to be made even if it gives you an issue you feel you need to take up on appeal. In fact it would be probably helpful to have some appellate guidance on that point. That being as it may, if we had stayed at a level 26 and given my general feeling about what Mr. Medina-Estrada did in setting up this drug deal and his engaging in this very unlawful exercise, I would have sentenced him to 87 months in prison, the top end of the guideline. And that

-6-

would be based on my assessment of his culpability and what I feel is an appropriate amount of time.

* * *

I have found that he committed perjury and we are at a level 28 and I am sentencing him to 87 months, the bottom of the guideline range. Because under the circumstances it still is the same person still dealing with the same drug offense and that is how I get there. I have always felt he committed perjury. And the guidelines box us into this bureaucratic reasoning and I am just openly admitting that seven years is about right for this criminal activity with the perjury. That is where I come out. So that discussion was largely academic in terms of the practical effect on his sentence. But I am sure not going to do the easy thing and that would be to find no perjury and have no issue on appeal, so you can feel free to take the issue up on appeal. I don't know if that will mean a resentencing because it would get us to 87 months again.

Id. at 21-23.

## Issue

On appeal, Medina-Estrada contends that the district court erred in applying a two level enhancement to his offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1 based on its finding that he committed perjury. Medina-Estrada asserts that the district court erroneously relied on his statements made in his plea of guilty, later withdrawn, as the factual predicate for its finding of perjury and that the district court failed to make sufficient factual findings to substantiate its finding of perjury.

## Discussion

### A. Admissibility of Statements Made During Plea Negotiations

Medina-Estrada contends that the district court erred in

relying on his statements made in his plea of guilty, which was later withdrawn, as the factual predicate for its finding that he committed perjury. Medina-Estrada asserts that Fed. R. Evid. 410 and Fed. R. Crim. P. 11(e)(6) prohibit the use of a defendant's statements made in a plea of guilty which was later withdrawn. He acknowledges the exception that these statements are admissible in a criminal proceeding for perjury but argues that sentencing is not a criminal proceeding for perjury.[3]

"[W]hile we review the factual findings of the district court under the clearly erroneous standard, and while we give due deference to the district court's application of the guidelines to the facts, when that application involves contested issues of law, we review de novo." United States v. Florentino, 922 F.2d 1443, 1445 (10th Cir. 1990). The interpretation of the Federal Rules of Evidence and the Federal Rules of Criminal Procedure are issues of

---

[3]     Fed. R. Evid. 410 provides:

**Rule 410.  Inadmissibility of Pleas, Plea Discussions, and Related Statements**
Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
    (1)  a plea of guilty which was later withdrawn;
                         * * *
    However, such a statement is admissible . . . (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.

Fed. R. Crim. P. 11(e)(6) is materially the same.

law which we review de novo. United States v. Maher, 919 F.2d 1482, 1485 (10th Cir. 1990).

Here, there is no dispute that the statements relied on by the district court in support of its finding that Medina-Estrada committed perjury at trial were made during Medina-Estrada's plea of guilty which was later withdrawn. The issue is whether the district court was permitted to rely on such statements in view of Fed. R. Evid. 410 and Fed. R. Crim. P. 11(e)(6) which prohibit the admission of evidence relating to pleas of guilty which are later withdrawn in any civil or criminal proceeding.

Although not cited by either party, we conclusively decided this issue in United States v. Ruminer, 786 F.2d 381 (10th Cir. 1986), wherein we held that Fed. R. Evid. 410 and Fed. R. Crim. P. 11(e)(6) do not apply at sentencing. In Ruminer, the defendants contended that, based on Fed. R. Evid. 410 and Fed. R. Crim. P. 11(e)(6), the district court erred in considering certain statements made by them during plea discussions in setting their sentences. Id. at 384. The government conceded that the statements relied upon by the district court were made during plea negotiations. Id. at 385. Therefore, the only issue, as in this case, was whether Fed. R. Evid. 410 or Fed. R. Crim. P. 11(e)(6) prohibited the use of those statements.

In considering the application of Fed. R. Evid. 410, we noted that Fed. R. Evid. 1101(d)(3) "expressly excludes the application

of the Federal Rules of Evidence (other than with respect to privileges) at 'sentencing.'" Id. Since Fed. R. Evid. 410 does not apply at sentencing, it cannot prohibit the sentencing court's consideration of evidence relating to pleas of guilty which are later withdrawn.

In considering the application of Fed. R. Crim. P. 11(e)(6), we recognized that unlike the Federal Rules of Evidence, the Federal Rules of Criminal Procedure contain no counterpart to Fed. R. Evid. 1101(d)(3). Id. at 386. Therefore, there appeared to be an inconsistency between the two rules. However, we resolved this apparent inconsistency on "the specific principles governing criminal sentencing in the United States District Court as clearly articulated by Congress and the Supreme Court." Id. We concluded that "[i]t is thus permissible for a district judge to consider information in sentencing that would be inadmissible for the purpose of determining guilt," id, and that "[w]e are convinced that the prohibition of Rule 11(e)(6)(D) of the Rules of Criminal Procedure was not intended to apply to the sentencing stage of a trial." Id. at 387.

Based on Ruminer, we hold that Medina-Estrada's contentions that Fed. R. Evid. 410 and Fed. R. Crim. P. 11(e)(6) prohibit the district court's use of his statements are meritless. Neither rule applies to the district court at sentencing; therefore, neither rule limits that which the district court may consider in

-10-

sentencing a defendant. "Congress has directed that [N]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence. 18 U.S.C. § 3661." Id. at 386. Finally, we need not address Medina-Estrada's argument that sentencing is not a "criminal proceeding" under the exceptions to the rules because, when the rules do not apply neither do the exceptions.

B. Sufficiency of the Evidence

Medina-Estrada contends that the district court failed to make sufficient factual findings to substantiate its findings of perjury in support of its two level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. "The district court's application of the Sentencing Guidelines to the facts of a particular case is entitled to due deference and its factual findings will not be reversed unless clearly erroneous." United States v. Urbanek, 930 F.2d 1512, 1514 (10th Cir. 1991).

"In order to apply the § 3C1.1 enhancement, it is well-settled that a sentencing court must make a specific finding--that is, one which is independent of the jury verdict--that the defendant has perjured [himself]." United States v. Massey, 48 F.3d 1560, 1573 (10th Cir.), cert. denied, ___ U.S. ___ (1995). "A finding of perjury in support of a sentence enhancement for obstruction of

justice must contain two components." United States v. Smith, 1996 WL 50181, at *2 (10th Cir. 1996).

First, the finding must encompass all of the factual predicates of perjury as required by United States v. Dunnigan, 507 U.S. 87, 94 (1993). The factual predicates of perjury are that a defendant (1) while testifying under oath or affirmation, gave false testimony, (2) concerning a material matter, (3) with willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory. Smith, 1996 WL 50181, at *2; Massey, 48 F.3d at 1573. Second, the finding must specifically identify the perjured testimony. Smith, 1996 WL 50181, at *2; United States v. Arias-Santos, 39 F.3d 1070, 1077 (10th Cir. 1994), cert. denied, ___ U.S. ___ (1995). The district court need not recite the perjured testimony verbatim. Rather,

> [t]he district court may generally identify the testimony at issue from his or her trial notes or memory and it is sufficient if such testimony is merely described in substance so that when we review the transcript we can evaluate the Dunnigan findings of the elements of perjury against an identified line of questions and answers without having simply to speculate on what the district court might have believed was the perjurious testimony.

Massey, 48 F.3d at 1574. See also United States v. Owens, 70 F.3d 1118, 1132 (10th Cir. 1995) (citing Massey).

Here the district court's findings adequately identify Medina-Estrada's perjurious trial testimony. However, the findings fail to set forth all of the requisite factual predicates of perjury. Specifically, the district court did not find, even generally, that

-12-

Medina-Estrada was untruthful about a *material matter* nor that he *willfully intended* to provide false testimony. See Smith, 1996 WL 50181, at *3 (findings insufficient because missing findings of materiality and willfulness); Massey, 48 F.3d at 1573 ("[m]issing from the district court's findings are the necessary findings on materiality and willfulness").

Here, the district court's finding of perjury did not encompasses all of the requisite factual predicates. Accordingly, the district court's finding of perjury was clear error. However, the error was harmless and no remand for further findings is necessary because the district court made it clear at sentencing that Medina-Estrada's sentence would be the same regardless of the enhancement for obstruction of justice. While sentencing Medina-Estrada to 87 months imprisonment, the bottom end of the guideline range for an offense level of 28, the district court stated that

> if we had stayed at a level 26 and given my general feeling about what Medina-Estrada did in setting up this drug deal and his engaging in this very unlawful exercise, I would have sentenced him to 87 months in prison, the top end of the guidelines. And that would be based on my assessment of his culpability and what I feel is an appropriate amount of time.

(ROA, Vol. VI at 22). Cf. Urbanek, 930 F.2d at 1516 ("Unless the district court makes it clear during the sentencing proceeding that the sentence would be the same under either of the applicable Guideline ranges, we are compelled to remand for resentencing when we find, as we do here, that an improper offense level was

-13-

applied."). Any other result in this situation would be waste of judicial resources.

Conclusion

For the foregoing reasons, the sentence of the district court is AFFIRMED.

**AFFIRMED.**