UNITED STATES of America,
Plaintiff–Appellee,
v.
Joseph D. LUDWIG and Lois V.
Ludwig, Defendants–Appellants.

Nos. 89–1424, 89–1425.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1989.

Decided March 8, 1990.

As Amended March 12
and March 21, 1990.

Mel S. Johnson, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Marna M. Tess–Mattner, Gimbel, Reilly, Guerin & Brown, Milwaukee, Wis., for defendants-appellants.

Before CUMMINGS, WOOD, Jr., and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Joseph D. Ludwig and Lois V. Ludwig appeal from a judgment of guilty convicting each of them of one count of conspiracy to defraud the government in violation of 18 U.S.C. § 371 and one count of tax evasion for the 1981 taxable year in violation of 26 U.S.C. § 7201. We affirm.

## I.

Joseph D. Ludwig owned three discount furniture stores in the cities of Neenah, Kaukauna, and Little Chute, Wisconsin, each operating under the name of Factory Outlet Furniture (hereinafter F.O.F.). Following an Internal Revenue Service investigation, Joseph Ludwig and his second wife, Lois Ludwig, were charged with conspiracy to defraud the government and tax evasion as a result of underreporting cash received from F.O.F. furniture sales.

Prior to the founding of Factory Outlet Furniture, Joseph Ludwig owned a bowling alley operated under the trade name of Ludwig Lanes. In 1971 Ludwig and wife # 1, Beatrice Ludwig, sold the bowling alley and received a net profit of between $65,000 and $75,000.[1] Ludwig told Internal Revenue Service Special Agent Lawrence Hart that because he did not trust banks, he kept the $65,000 to $75,000 cash proceeds from this bowling alley sale in a box in a closet in his Freedom, Wisconsin, home from 1971 until 1981 when he built the Kaukauna furniture store. The ensuing facts recited herein cast doubt on Ludwig's statement concerning his mistrust of banks and his alleged keeping of the $65,000 to $75,000 in cash in his home. Furthermore,

at trial Ludwig's first wife, Beatrice, did not corroborate Ludwig's story concerning the storage of the bowling alley proceeds, stating that she never saw a box of currency in their home during the five years after the sale of the bowling alley. In addition, several of the financial statements (personal records) Ludwig furnished during the course of the government investigation between 1976 and 1982 made no mention of the cash proceeds from the bowling alley sale. Furthermore, the stipulated property settlement entered into during the 1976 divorce proceedings of Joseph and Beatrice Ludwig failed to reflect the $65,000 to $75,000 or any significant amount of cash on hand. Also, statements made for the purposes of securing loans in 1979, 1981 and 1982 listed cash amounts on hand ranging between $20,000 and $30,000, significantly less than the amount Ludwig supposedly kept in the mystery box in the closet in his home. In addition, the April 1980 pre-marital agreement between Joseph Ludwig and his second wife, Lois Ludwig, failed to specifically mention a significant level of cash on hand. Moreover, the government alleged that the absence of a rider in the Ludwig's home insurance policy protecting this cash and the likely presence of start-up costs accompanying Ludwig's entry into the furniture business in the early 1970s, for which this money might have been used, cast further doubt on Ludwig's statements concerning the bowling alley proceeds.

Factory Outlet Furniture was founded by the Ludwigs in the early 1970s, just after the sale of Ludwig Lanes with the business originally operating out of the garage and basement of the Ludwigs' home. Thereafter, a store was opened in Little Chute, Wisconsin and later stores were opened in Neenah and Kaukauna, Wisconsin.[2] Former F.O.F. employees testified concerning the store's unconventional sales and accounting practices in years beginning with 1982.[3] According to the for-

1. Beatrice and Joseph Ludwig were divorced in 1976.

2. The Kaukauna store has since closed.

3. Testimony was not offered concerning earlier years. However, there was no testimony indicating that accounting and sales practices in

mer F.O.F. employees, store policies required differing treatment for cash and non-cash sales. Employees were instructed to fill out receipts with notations of "G" for cash sales and a check ("✓") for check sales. When cash was accepted, it was put in an envelope with the amount of cash received and the customer's name written on the envelope. These envelopes were kept in a drawer behind the sales counter and at the end of each day Joseph Ludwig would transfer the envelopes containing cash to his home and would count and store the money there.

Former F.O.F. employees also testified that a ledger was used to compile the monthly sales figures. Each month some, but not all, of the cash receipts were commingled with the receipts paid for by check to produce the monthly sales figures. These figures were then submitted to the Ludwigs' accountant, Duane Kalm, who prepared the Ludwigs' taxes. The Ludwigs' accounting practices also carried over to the storage of the sales slips. Testimony also revealed that the sales slips generated from the receipts paid for by check and the sales slips from the receipts paid by cash that had been integrated to produce the monthly sales figures were kept in one area. The sales slips generated from the cash receipts that were not incorporated in the monthly sales figures were kept in a separate area. Both the accounting and sales slips storage practices assisted in the Ludwigs' accumulation of unreported income.

Further evidence pointed toward the presence of significant amounts of possibly unaccounted for cash in the Ludwigs' possession. Evidence was presented at trial establishing that Joseph Ludwig relied heavily on cash to purchase expensive items, including purchases of boats and cars, as well as an addition to his home. Evidence was also submitted concerning the Ludwigs' storage of cash in safes at home and in safety deposit boxes, apparently in banks. Lois Ludwig told a former F.O.F. employee that there was $200,000 to $500,000 kept in a safe at the Ludwigs'

years prior to 1982 differed from those utilized

home and in her children's safety deposit boxes, apparently located in a bank. Lois Ludwig also told the F.O.F. employee that the cash was kept in the children's safety deposit boxes rather than in an interest bearing account because the Ludwigs were not supposed to have the money. This statement reflected an apparent knowledge on Lois Ludwig's part that the cash had not been reported to the IRS and went to establish her intent to defraud the government.

■ In establishing its case, the government utilized the "bank deposits" method of proof. This method of proof permits the investigating officer to reconstruct a taxpayer's income, including his expenses and purchases, thus allowing the government to attempt to establish the amount of unreported income. In *United States v. Hall*, 650 F.2d 994, 996–97 n. 4 (9th Cir.1981), the Ninth Circuit described this method as follows:

"The bank deposits method of proof is ... a circumstantial way of establishing unreported income. It purports to demonstrate that excess income must exist by showing excessive unaccounted for bank deposits. The bank deposits for the tax year are totaled, with adjustments made for funds in transit at the beginning and end of the year. Non-income deposits are excluded, and non-deposited income is included. This constitutes a reconstructed gross income. Calculation of taxable income then proceeds in the usual way, taking into account the legitimate deductions, exceptions, exclusions and credits. In the case of a business this would exclude the business' cost of goods sold and other expenses. If the resultant figure differs from what the taxpayer has reported, the government will contend that the difference is unreported income."

Utilizing the bank deposit method, the government asserted that the defendants underreported taxable income in the amounts of $67,866.25 in 1980, $69,077.93 in 1981, and $18,962.46 in 1982. Thus, the defendants underreported their tax liability in 1982.

by \$33,816 in 1980, \$36,863 in 1981 and \$9,451 in 1982. It was also determined that in 1983 the defendants underreported a tax liability in the amount of \$21,873.

Following trial, the jury found Joseph and Lois Ludwig each guilty of one count of conspiracy to defraud the government in violation of 18 U.S.C. § 371 as well as one count of tax evasion for the taxable year 1981 in violation of 26 U.S.C. § 7201. The court sentenced Joseph Ludwig to fifteen months of incarceration, two years of probation consecutive to his release from custody and a \$10,000 fine. Sentence was withheld for Lois Ludwig who was placed on two years' probation and fined \$5,000.

## II.

As previously discussed, the government relied upon the bank deposits method to establish its case against the Ludwigs. The Ludwigs contend that the government failed to make a complete and adequate investigation of their financial situation and, thus, presented an inaccurate picture of their financial situation under the bank deposits method. Specifically, the Ludwigs allege two deficiencies in the government's proof: (1) the government failed to adequately investigate Joseph Ludwig's explanation that he had a large amount of cash on hand as a result of his 1971 sale of the bowling alley and (2) the government erroneously characterized certain deposits received in Mrs. Ludwig's personal bank account as taxable income.

■ In approaching the question of whether the government adequately proved its "bank deposits" case, the Ludwigs assert that we should direct our attention to the question of the quality of the investigation the government conducted and whether the government investigators appropriately followed all the "leads" in determining whether certain items were "income" or "non-income" receipts. In contrast, the government contends that the controlling question is the sufficiency of the evidence, thus meaning that the only question this court need address is whether the "bank deposits" method proof the government presented was sufficient for a reasonable

jury to convict the Ludwigs of conspiracy to defraud the government and tax evasion. We agree with the government's position. The Ludwigs' challenge is to the quantity and method of proof the government utilized. We see nothing to distinguish this case from other criminal tax cases where the defendants allege that the proof the government presented of their criminal conduct is insufficient. Certainly the adequacy of the government's investigation and whether the government must follow all "leads" is a factor we must consider in determining whether there was sufficient evidence for any reasonable jury to find the Ludwigs guilty of conspiracy to defraud the government and tax evasion. Nonetheless, we must consider this factor in the overall context of whether there existed sufficient evidence upon which the trier of fact could properly find guilt beyond a reasonable doubt of the crimes charged.

"In evaluating [the Ludwigs'] sufficiency of the evidence challenge, we note that [they] bear [ ] a heavy burden. Initially, we 'review all the evidence and all the reasonable inferences that can be drawn from the evidence in the light most favorable to the government.' " *United States v. Nesbitt*, 852 F.2d 1502, 1509 (7th Cir. 1988) (quoting *United States v. Pritchard*, 745 F.2d 1112, 1122 (7th Cir.1984)). "The test is whether after viewing the evidence in the light most favorable to the government, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Pritchard*, 745 F.2d at 1122 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)).

> "As we emphasized in *United States v. Giangrosso*, 779 F.2d 376, 382 (7th Cir. 1985): '[T]his court is not the trier of fact and we are required to uphold the jury's verdict where "any rational trier of fact" would have found the defendant guilty of the crime.' ... 'Only when the record contains no evidence regardless of how it is weighed, from which the [trier of fact] could find guilt beyond a reasonable doubt, may an ap-

*pellate court overturn the verdict.'* *Nesbitt,* 852 F.2d at 1509 (quoting *United States v. Whaley,* 830 F.2d 1469, 1472 (7th Cir.1987), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988) which quoted, in turn, *United States v. Moore,* 764 F.2d 476, 478 (7th Cir.1985)) (emphasis added)."

*United States v. Vega,* 860 F.2d 779, 793 (7th Cir.1988).

■ A jury is entitled to rely upon circumstantial evidence, such as that utilized in the bank deposits method, in determining a defendant's guilt. As we observed in *United States v. Grier,* 866 F.2d 908, 923 (7th Cir.1989):

" 'Not only is the use of circumstantial evidence permissible, but "circumstantial evidence 'may be the sole support for a conviction.' " ' *United States v. Nesbitt,* 852 F.2d at 1510 (quoting *United States v. Williams,* 798 F.2d 1024, 1042 (7th Cir.1986) (dissenting opinion) which quoted, in turn, *United States v. McCrady,* 774 F.2d 868, 874 (8th Cir.1985)). ' "Circumstantial evidence is not less probative than direct evidence, and, in some cases is even more reliable." ' *Williams,* 798 F.2d at 1039 (dissenting opinion) (quoting *United States v. Andrino,* 501 F.2d 1373, 1378 (9th Cir.1974)). *See also Wisconsin Jury Instruction—Criminal, No. 170* ('[C]ircumstantial evidence may be stronger and more convincing that (sic) direct evidence'). '[T]he evidence " 'need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt.' " *United States v. Radtke,* 799 F.2d 298, 302 (7th Cir.1986) (quoting *United States v. Thornley,* 707 F.2d 622 (1st Cir.1983)).' *United States v. Koenig,* 856 F.2d [843] at 854 [7th Cir.1988]."

In weighing both direct and circumstantial evidence

"[j]uries are entitled to draw upon their own experience in life as well as their common sense in reaching their verdict. See [*United States v. Radtke,* 700 F.2d 298, 302 (7th Cir.1986) ]. While '[c]ommon sense is no substitute for evidence,

... common sense should be used to evaluate what reasonably may be inferred from circumstantial evidence.' *Id.*"

*Nesbitt,* 852 F.2d at 1511. Not only do we recognize the jury's experience in the affairs of life, but we also acknowledge the jury's role as the arbiter of credibility:

"[W]e defer to the jury's determination of witnesses' credibility. As we noted in *United States v. Ramirez,* 796 F.2d 212, 214 (7th Cir.1986): 'An appellate court will not weigh the evidence or assess the credibility of the witnesses.' Similarly, we have stated: ' "It is well settled law that a court of appeals does not stand in judgment of the credibility of witnesses. Rather that question is left to the sound discretion of the trier of fact." ' *United States v. Perry,* 747 F.2d 1165, 1170 (7th Cir.1984) (quoting *United States v. Roman,* 728 F.2d 846, 856 (7th Cir.1984)). Finally, 'the credibility of witnesses is peculiarly within the province of the jury and our review of credibility is prohibited absent extraordinary circumstances.' *United States v. Noble,* 754 F.2d 1324, 1332 (7th Cir.1985)."

*Vega,* 860 F.2d at 794.

■ In analyzing the defendants' sufficiency of the evidence argument, we turn initially to their contention that the government's bank deposits calculations inappropriately failed to consider as "cash on hand" the proceeds from the 1971 bowling alley sale that Joseph Ludwig allegedly stored in his home for nearly ten years. "The beginning cash on hand figure is important because a large amount of undeposited cash could explain [the Ludwigs'] 'excessive' deposits." *United States v. Soulard,* 730 F.2d 1292, 1298 (9th Cir.1984). In this case all parties agreed to the following jury instruction concerning cash on hand:

"Because the bank deposit method of proving unreported income involves a review of the defendants' deposits and cash expenditures which come from taxable sources, the government must establish an accurate cash on hand figure for the beginning of the tax year. The proof need not show the exact amount of the

cash on hand so long as it is established, ... the government's claimed cash on hand figure is reasonably accurate. So if you should decide that the evidence does not establish with reasonable certainty what the defendants' cash on hand was at the beginning of the year, you should find the defendants not guilty. In determining whether or not the claimed cash on hand of a defendant at the starting point or the beginning of a year is reasonably accurate you may consider whether government agents sufficiently investigated all reasonable leads suggested to them by the defendant or which otherwise surfaced during the investigation concerning the existence of other funds at that time. If you should find that the government's investigation has either failed to reasonably pursue or to refute plausible explanations which were advanced by the defendant or which otherwise arose during the investigation concerning the defendants' cash on hand at the beginning of the year, then you should find the defendants not guilty.

Notice, however, that this duty to reasonably investigate applies only to suggestions or explanations made by the defendant or to reasonable leads which otherwise turn up. The government is not required to investigate every conceivable source of nontaxable funds."

Assuming the jury followed this instruction, it would have determined both that the government's position concerning the amount of cash on hand was appropriate and that the government adequately investigated the explanations the Ludwigs proffered concerning the cash on hand issue. In reviewing the jury's verdict with respect to this cash on hand question, it is evident that the jury chose to credit the sworn testimony of the IRS representatives rather than the Ludwigs' assertion concerning their cash on hand theory. Not only is this choice supported in our recognition that the jury is the arbiter of creditability, it is also strongly buttressed by several relevant

facts. Initially, no person testifying at trial corroborated Ludwig's assertion that he kept $65,000 or $75,000 in cash in a box in his residence, and thus the jury was entitled to disbelieve Ludwig's unsupported testimony. Furthermore, the jury cannot be faulted for believing that a man who ran an expanding furniture business and who had a history of purchasing expensive items, such as boats and cars, and building home additions, with cash, very likely would have exhausted any cash receipts from his bowling alley sale over the roughly nine years between this sale and the 1980 through 1983 tax years at issue in this matter. Even more significantly, Mr. Ludwig's assertions are in sharp contrast with the stipulated divorce property settlement, his prenuptial agreement prior to his second marriage and several loan applications.[4] Furthermore, the jury would have been well within its province in discrediting Joseph Ludwig's explanation that he did not trust banks, in light of his use of bank accounts in the business enterprise. In our case, as in *United States v. Soulard:*

> "The jury was properly instructed as to the bank deposits method of proof and the figures used therein. It was for the jury to determine whether the figure in the Government's bank deposits analysis properly represented [the defendants'] cash on hand at the beginning of the prosecution. Having found [the defendants] guilty ... the jury apparently gave greater weight to the Government's figure than to the [conflicting evidence]."

730 F.2d at 1298–99. Thus, we conclude that the jury appropriately accepted the Government's position concerning the amount of cash on hand.

■ The Ludwigs' next argument is that the Government erroneously included as taxable income deposits of unknown origin that were made in Lois Ludwig's personal bank accounts in the amounts of $16,139.83 in 1980 and $31,286.72 in 1981. The Ludwigs assert that these amounts do not have the appearance of income required for

---

**4.** In *Soulard,* the Ninth Circuit recognized that a signed financial statement submitted to a bank could be admitted and relied upon as evidence

refuting a taxpayer's assertions regarding cash on hand. 730 F.2d at 1298.

882

them to be classified as income under the bank deposits method. In support of their position, they assert that these deposits were irregular, not specifically identified as coming from any income source, were made to a personal rather than business account and were placed in an account that Joseph Ludwig had no control over.

With respect to these amounts the jury was instructed that:

"[T]his duty to reasonably investigate applies only to suggestions or explanations made by the defendant or to reasonable leads which otherwise turn up. The Government is not required to investigate every conceivable source of nontaxable funds. If you decide that the evidence in this case establishes beyond a reasonable doubt that the defendants' bank deposits together with their un, rather, non-deductible cash expenditures during the year did substantially exceed the amount of income reported on the defendants' income tax return for that year, you should then proceed to decide whether the evidence also establishes beyond a reasonable doubt that such additional deposits and expenditures represented taxable income, that is, income from taxable sources on which the defendant willfully attempted to evade and defeat the tax as charged in the indictment."

■ Having received this instruction, it was necessary for the jury to determine that the involved deposits and expenditures represented income from taxable sources. The jury was confronted with admissions from Lois Ludwig that money was hidden in her children's safety deposit boxes, a fact from which they could permissibly infer that Lois Ludwig may very well have also attempted to hide other amounts of cash in her "personal" bank account. Furthermore, the jury could have appropriately considered the fact that Lois Ludwig never offered a non-taxable characterization of the money deposited into her accounts in 1980 and 1981. In the words of the district court's proper instruction to the jury, the "duty to reasonably investigate applies

only to suggestions or explanations made by the defendant or to reasonable leads which otherwise turn up. The government is not required to investigate every conceivable source of non-taxable funds." Here the jury appropriately determined that the unaccounted for funds were "taxable income," a determination that can be supported in light of testimony concerning the Ludwigs' possession of a great deal of cash attributable to taxable income. Furthermore, even if the Ludwigs' characterization of these deposits as nontaxable was

"a permissible construction of the facts, it would not preclude a finding of guilt because the evidence ' "need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt." ' United States v. Radtke, 799 F.2d 298, 302 (7th Cir.1986) (quoting United States v. Thornley, 707 F.2d 622 (1st Cir.1983)). See also United States v. Zanin, 831 F.2d 740, 745 (7th Cir.1987) ('Phyllis Zanin argues that all conversations in which she participated are susceptible to an innocent explanation. This may or may not be true—but it is irrelevant. The existence of an innocent explanation does not foreclose a jury from finding guilt beyond a reasonable doubt')."

United States v. Grier, 866 F.2d 908, 931 (7th Cir.1989). "Based upon these facts a factfinder 'exercising well-reasoned judgment could very well conclude that the inculpatory inferences outweigh the exculpatory inferences that could be drawn from the evidence beyond a reasonable doubt,' Nesbitt, 852 F.2d at 1511, and have found that"[5] the Ludwigs were guilty of conspiracy to defraud the government and tax evasion.

### III.

■ The Ludwigs also challenge the district court's rejection of their motion for a new trial. Specifically, the Ludwigs allege on appeal that the district court erroneously failed to consider their argument that a new trial should be granted because the

---

5. United States v. Carrasco, 887 F.2d 794, 812 (7th Cir.1989).

jury's verdict was contrary to the weight of the evidence. In support of their position the Ludwigs cite the facts that much of the evidence presented to the jury concerned the years 1982 and 1983 while very little evidence concerned the years 1980 and 1981. They also point to the alleged problems in the bank deposit method calculations that IRS personnel prepared. The district court rejected the Ludwigs' new trial motion in its entirety, but did not specifically address the question of whether the jury's verdict was contrary to the weight of the evidence.

In *United States v. Reed*, 875 F.2d 107, 113 (7th Cir.1989), we observed:

> "The decision to grant or deny a motion for new trial rests within the sound discretion of the trial court. In reviewing the trial court's disposition of a motion for new trial, '[t]he appellate court properly defers to the view of the trial court unless there has been an error as a matter of law or a clear and manifest abuse of discretion.' *United States v. Davis*, 604 F.2d 474, 484 (7th Cir.1979) (citation omitted).
>
> > 'While the district court's discretion is quite broad, there are limits to it. The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.... The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.... Motions for new trial based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really "exceptional cases."'
>
> *United States v. Martinez*, 763 F.2d 1297, 1312–13 (11th Cir.1985) (citations omitted)."

(Citations omitted).

Our review of the record demonstrates to our satisfaction that a strong case for criminal liability was presented under the "bank deposits" method. We are convinced that the evidence of irregular accounting methods combined with the presence and use of large amounts of cash on the part of the Ludwigs combine to establish a record that preponderates in favor of guilt rather than innocence. As we noted in *Reed*, we do not believe this is one of those "exceptional cases" where the preponderance of evidence is such that "it would be a manifest injustice to let the guilty verdict stand." 875 F.2d at 114. Rather, the weight of the evidence in our view favors the Ludwigs' conviction and we refuse to disturb the district court's refusal to grant a new trial.

Because there was more than sufficient evidence to convict the Ludwigs and because the weight of the evidence does not mandate the granting of a new trial, the Ludwigs' convictions are

AFFIRMED.