F I L E D
United States Court of Appeals
Tenth Circuit

FEB 22 2000

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENHS CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WILLIAM L. MOUNKES AND
CORREEN KAY MOUNKES,

Defendants - Appellants.

No. 99-3096 & 99-3098

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D. Ct. Nos. 98-40032-01-DES & 98-40032-02-DES)**

---

Thomas D. Haney, Fairchild, Haney & Buck, P.A., Topeka, Kansas, appearing for Defendants-Appellants.

Meghan S. Skelton (Alan Hechtkopf, with her on the brief), Attorneys, Tax Division, Department of Justice, Washington, DC, appearing for Plaintiff-Appellee.

---

Before **TACHA** , **MCWILLIAMS** , and **KELLY** , Circuit Judges.

---

**TACHA** , Circuit Judge.

---

Defendants William L. and Correen Kay Mounkes appeal from the district court's order denying their motions for judgment of acquittal and for a new trial.

Defendants also appeal the district court's two point enhancement of Mr. Mounkes's sentence and the district court's failure to rule upon their motion for a one point reduction of Mrs. Mounkes's sentence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and affirm.

I.

Mr. and Mrs. Mounkes owned and operated Bill Mounkes, Inc. (BMI). BMI purchased used educational materials from professors and colleges and at government auctions, then sold the materials to distributors. One distributor, Amtext, sometimes sent defendants multiple checks to pay for a single shipment. Mr. Mounkes testified that somebody at Amtext advised him to request payment by multiple checks for sums over $10,000 in order to avoid IRS paperwork. Amtext's financial officer, Paula Blanche, testified that Amtext would break up payments only upon a payee's request. Ms. Blanche did not recall having spoken personally to Mr. Mounkes about multiple check payments.

On at least one occasion, Mr. Mounkes cashed multiple payment checks for a single shipment of BMI materials at different bank branches on the same day. On at least one other occasion, Mr. Mounkes cashed multiple checks at the same bank branch on different days. Mr. Mounkes testified that he knew about the IRS's $10,000 transaction reporting requirement but did not comply because he was concerned that filling out the reports would lengthen his already lengthy

workdays.

Mr. and Mrs. Mounkes maintained both business and personal bank accounts. Stanley Buss, the Mounkeses' accountant, testified that he instructed the Mounkeses to keep their business and personal accounts separate. Mr. Mounkes testified that he did not recall being so advised.

The IRS audited the Mounkeses' personal income tax returns for 1989 and their personal and corporate income tax returns for 1991 and 1992. In the 1989 audit, IRS Agent Robert Tice found that the Mounkeses had deducted $10,000 in corporate expenses on their personal return. Tice testified that he explained to Mr. Mounkes that personal and corporate expenses must be kept separate and that the Mounkeses could properly receive payments from the corporation only in the form of wages or dividends. Mr. Mounkes testified that he had never heard of a dividend until trial.

In the 1991 and 1992 audits, IRS Agent Maria Espinoza employed the "bank deposits" method of determining unreported income. This method required that she compare the Mounkeses' bank deposits and nondeductible personal expenditures to the income reported on their tax returns for each audited year. Espinoza therefore had to establish a "cash on hand balance" for the beginning of each of those years. In BMI's 1991 corporate tax return, Mr. Mounkes reported that BMI's cash on hand was $1000 at the beginning and $296 at the end of the

year. Mr. Mounkes also gave Espinoza a handwritten statement of personal cash on hand repeating what he had reported for BMI. He further testified that he did not keep any additional cash at home or in his desk.

Espinoza ultimately found that the Mounkeses' bank deposits and personal expenditures significantly exceeded the amount of income they reported on their personal returns for 1991 and 1992. She testified that Mr. Mounkes blamed the discrepancies on Buss. Mr. Mounkes testified that he had told Buss that certain land and jewelry he purchased were corporate assets. Evidence at trial indicated otherwise, and Buss testified that he believed the assets to be personal on the basis of information that Mr. Mounkes had provided him.

A grand jury indicted the Mounkeses on four counts of attempting to evade personal and corporate income taxes in violation of 26 U.S.C. § 7201. A jury convicted both defendants on all four counts. The Mounkeses moved for a judgment of acquittal and a new trial, and the district court denied both motions. In sentencing the defendants, the trial court applied a two point enhancement to Mr. Mounkes's sentence for obstruction of justice pursuant to U.S. Sentencing Guidelines Manual § 3C1.1 (1998). Under 18 U.S.C. § 3553(b), the court did not rule upon the Mounkeses' motion for a one point reduction of Mrs. Mounkes's sentence on the basis of circumstances not contemplated by the sentencing guidelines.

## II.

The Mounkeses challenge the denial of their motions for judgment of acquittal and for a new trial, arguing that the evidence of beginning on-hand cash balances was insufficient to support a guilty verdict. In determining the sufficiency of evidence, we review the record de novo. United States v. Urena, 27 F.3d. 1487, 1489 (10th Cir. 1994). We review the evidence to determine whether, if taken in the light most favorable to the prosecution, it is sufficient for a reasonable jury to find the defendants guilty beyond a reasonable doubt. United States v. Jenkins, 175 F.3d 1208, 1215 (10th Cir.), cert. denied, 120 S. Ct. 263 (1999). "The evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt." United States v. Anderson, 189 F.3d 1201, 1205 (10th Cir. 1999) (internal quotation marks and citation omitted).

We review the district court's refusal to grant a new trial for abuse of discretion. United States v. Quintanilla, 193 F.3d 1139, 1146 (10th Cir. 1999). The trial court may grant a new trial if the interests of justice so require. Fed. R. Crim. P. 33. Motions for new trial are disfavored, however, and granted only with great caution. Quintanilla, 193 F.3d at 1146.

A jury convicted the Mounkeses of willfully attempting to evade personal and corporate income taxes in violation of 26 U.S.C. § 7201. To establish that offense, the government must prove 1) the existence of a substantial tax liability,

2) willfulness, and 3) an affirmative act constituting evasion or attempted

evasion. United States v. Meek, 998 F.2d 776, 779 (10th Cir. 1993) (citing

Sansone v. United States, 380 U.S. 343 (1965)). The Mounkeses argue that there

was insufficient evidence to prove the first element.

To establish the first element, the government employed the bank deposit

method of proof. The government's evidence showed that the Mounkeses' bank

deposits and cash expenditures exceeded their reported income after adjustments

for applicable exemptions and deductions. Such evidence supports an inference

that defendants had unreported income. See United States v. Conaway, 11 F.3d

40, 43 (5th Cir. 1993); United States v. Ludwig, 897 F.2d 875, 878 (7th Cir.

1990); United States v. Abodeely, 801 F.2d 1020, 1023 (8th Cir. 1986). This

"indirect" method of proof is permitted because "direct methods of proof . . .

depend on the taxpayer's voluntary retention of records," rendering "[p]roof of

unreported taxable income by direct means . . . extremely difficult and often

impossible." Abodeely, 801 F.2d at 1023. However, to distinguish between

unreported, taxable income and those deposits and expenditures not derived from

taxable income, the government still must establish the defendants' pre-income

"cash on hand" with reasonable certainty, while negating other sources of

nontaxable income during the same period. Conaway, 11 F.3d at 44. On the

other hand, the government need not establish the "cash on hand" figure with

- 6 -

mathematical exactitude. Id.; see also Ludwig, 897 F.2d at 880-81; United States v. Boulet, 577 F.2d 1165, 1170 (5th Cir. 1978).

Agent Espinoza testified at trial that she defined "cash on hand" for Mr. Mounkes when she sought his beginning cash balances. The record indicates that Mr. Mounkes then gave Espinoza a written statement of his cash on hand, and that statement was admitted into evidence. Mr. Mounkes testified at trial that he did not keep unreported cash at home or in his desk. Finally, BMI's corporate balance sheets and tax returns, which were admitted into evidence, precisely corroborated the figures that Mr. Mounkes gave to Espinoza. Under these circumstances, the jury could quantify the Mounkeses' beginning cash on hand with reasonable certainty for 1991 and 1992. Thus the evidence, when taken in the light most favorable to the prosecution, was sufficient for a reasonable jury to find the Mounkeses guilty beyond a reasonable doubt. We therefore affirm the district court's denial of the Mounkes's motion for judgment of acquittal.

Because the Mounkeses based their motion for a new trial on the same claim as their motion for judgment of acquittal, we also conclude that the trial court did not abuse its discretion in denying their motion for a new trial. Nothing in the record indicates that the interests of justice required a new trial be granted.

III.

The Mounkeses also claim that the trial court erred in enhancing Mr.

Mounkes's sentence by two points for obstruction of justice pursuant to U.S. Sentencing Guidelines Manual § 3C1.1 (1998). The district court must enhance the defendant's base offense by two levels if it finds that

> the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense.

Id. The obstruction of justice enhancement may be predicated upon a defendant's "committing, suborning, or attempting to suborn perjury." Id. cmt. 4(b). The court sentenced the Mounkeses under the 1992 version of the sentencing guidelines and thus was required to evaluate Mr. Mounkes's statements "in a light most favorable to the defendant" in making its perjury determination. U.S. Sentencing Guidelines Manual § 3C1.1 cmt. 1 (1992), amended by U.S. Sentencing Guidelines Manual App. C. amend. 566 (1997).

Because the trial judge observed defendant's testimony, we give deference in reviewing the trial court's finding of perjury. United States v. Yost, 24 F.3d 99, 106 (10th Cir. 1995). However, "[w]hile we review the factual findings of the district court under the clearly erroneous standard, and while we give due deference to the district court's application of the guidelines to the facts, when that application involves contested issues of law, we review de novo." United States v. Medina-Estrada, 81 F.3d 981, 986 (10th Cir. 1996) (internal quotation marks and citation omitted).

A § 3C1.1 enhancement predicated upon perjury is appropriate when the sentencing court finds that the defendant has given "[i] false testimony [ii] concerning a material matter [iii] with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993) (citing 18 U.S.C. § 1621, the federal criminal perjury statute); accord Anderson, 189 F.3d at 1213. The sentencing court must "review the evidence and make independent findings necessary to establish [the elements of perjury]." Dunnigan, 507 U.S. at 95; see also Anderson, 189 F.3d at 1213 ("[I]n order to apply the § 3C1.1 enhancement, it is well-settled that a sentencing court must make a specific finding -- that is, one which is independent of the jury verdict -- that the defendant perjured herself." (internal quotation marks and citation omitted)). The court need not recite the perjured testimony verbatim, however. Medina-Estrada, 81 F.3d at 987. Rather, "[t]he district court may generally identify the testimony at issue . . . so that when we review the transcript we can evaluate the Dunnigan findings of the elements of perjury . . . without having simply to speculate on what the district court might have believed was the perjurious testimony." United States v. Massey, 48 F.3d 1560, 1574 (10th Cir. 1995).

A.

The Mounkeses raise two objections to the district court's perjury

- 9 -

enhancement. First, they contend that the district court did not follow the 1992 Sentencing Guidelines' requirement that testimony be evaluated in a light most favorable to the defendant. Rather, defendants imply that the district court followed the 1997 revision to this requirement, under which "the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory." See U.S. Sentencing Guidelines Manual App. C. amend. 566 (1997). We find no merit in this contention. The district court specifically noted that in enhancing Mr. Mounkes's sentence it had viewed his statements "in the most favorable light." (Appellants' Supp. App. Vol. 5 at 13.) Nothing in the record casts doubt upon this statement.

B.

The Mounkeses' second claim is that the sentencing court did not make independent Dunnigan findings. We disagree. Under Dunnigan, the sentencing court must find defendant's testimony false, material, and intended to affect the outcome of trial rather than a product of confusion, mistake or faulty memory. See Dunnigan, 507 U.S. at 94. The district court specifically cited two examples of Mr. Mounkes's testimony which in its judgment contradicted other persuasive trial testimony: (1) Mr. Mounkes's statements regarding personal use of corporate funds, which contradicted the testimony of Buss, the Mounkeses' accountant, and (2) Mr. Mounkes's testimony regarding why Amtext broke payments into

increments smaller than $10,000, which the court found to contradict the testimony of Blanche, Amtext's financial officer. Contradictions in testimony support findings of falsehood. See Anderson, 189 F.3d at 1213-14; United States v. Lowder, 5 F.3d 467, 471-72 (10th Cir. 1993). While Mr. Mounkes's testimony does not appear to contradict Blanche's testimony directly,[1] his testimony does directly contradict Buss's testimony. The district court therefore could conclude that Mr. Mounkes testified falsely.

The district court also expressly found that Mr. Mounkes's testimony was material and willful. Both the diversion of corporate funds to personal use and the structuring of payments to avoid IRS reporting requirements are "affirmative act[s] constituting evasion or attempted evasion" of income taxes. See Meek, 998 F.2d at 779. False testimony about such acts therefore would be material to the Mounkeses' prosecution for tax evasion. Finally, while there appear to be some indications of confusion as opposed to willfulness on Mr. Mounkes's part, these do not displace the deference we give to the trial judge, who was able to observe

---

[1]Mr. Mounkes testified that he asked Amtext to break up checks in payment of amounts exceeding $10,000 on the advice of an Amtext representative. Blanche testified that Amtext generally broke up payments only upon a payee's request. These assertions are not inconsistent. An Amtext employee could have advised Mr. Mounkes as to why he might prefer to have his payments broken up, and Mr. Mounkes could then have requested that the payments be broken up. However, Mr. Mounkes could not identify the Amtext employee who he claimed had given him the advice, and Blanche was not aware of any Amtext employee who did.

the defendant at trial and was best situated to determine whether Mr. Mounkes was merely confused or was being willfully evasive in order to avoid conviction. See Yost, 24 F.3d at 106.

In sum, we find that the sentencing court identified Mr. Mounkes's perjurious testimony and expressly evaluated this testimony in light of the three Dunnigan elements. Our de novo review of the district court's application of these elements reveals no misunderstanding of the law of perjury. Thus, we find no error in the sentencing court's enhancement decision under § 3C1.1. [2]

IV.

Finally, the Mounkeses claim that the district court erred in failing to rule upon their motion for a one point reduction of Mrs. Mounkes's sentence on the basis of circumstances not contemplated by the Sentencing Guidelines. Under 18 U.S.C. § 3553(b), a sentencing court may depart from the Guidelines if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a

_____

[2]The Mounkeses also object to the perjury enhancement on the ground that there is insufficient contrary testimony in the record to warrant the sentencing court's determination. The Mounkeses argue that such an inadequately supported determination will have a chilling effect on future defendants who would otherwise testify in their own defense at trial. The Supreme Court addressed a similar argument in Dunnigan, and concluded that a defendant's right to testify simply does not include the right to commit perjury. See 507 U.S. at 96. While a routine finding of untruthfulness based upon the verdict alone would impinge upon Mr. Mounkes's constitutional right to testify on his own behalf, Anderson, 189 F.3d at 1213, specific and independent findings of perjury which comply with the Dunnigan safeguards do not. See 507 U.S. at 96-97.

degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." The Mounkeses argued below that there were mitigating circumstances which warranted a downward departure in Mrs. Mounkes's sentence. The district court stated that it took Mrs. Mounkes's circumstances into consideration when it sentenced her, but did not explicitly rule on the motion for downward departure.

We "cannot exercise jurisdiction to review a sentencing court's refusal to depart from the sentencing guidelines except in the very rare circumstance that the district court states that it does not have any authority to depart from the sentencing guideline range for the entire class of circumstances proffered by the defendant." United States v. Castillo, 140 F.3d 874, 887 (10th Cir. 1998). The district court did not indicate that it lacked authority to depart from the sentencing guideline range in sentencing Mrs. Mounkes. We therefore lack jurisdiction to review the district court's decision not to grant the departure.

AFFIRMED.