**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Calvert CAYATINETO, Defendant–Appellant.**

**No. 01–2356.**

United States Court of Appeals, Tenth Circuit.

Oct. 28, 2002.

---

Tara C. Neda, David C. Iglesias, U.S. Attorney, Office of the United States Attorney District of New Mexico, Albuquerque, NM, for Plaintiff–Appellee.

Michael G. Katz, Fed. Public Defender, Jill M. Wichlens, Asst. F.P. Defender, Office of the Federal Public Defender District of Colorado and Wyoming, Denver, CO, for Defendant–Appellant.

Before TACHA, ALDISERT,* and McWILLIAMS, Circuit Judges.

## ORDER AND JUDGMENT**

TACHA, Chief Circuit Judge.

### I. BACKGROUND

This case arose from an automobile accident that occurred on October 14, 2000. On that date, Ms. Sophie Billie Martin and her two small children were traveling on a road within the Navajo Nation. A maroon sedan occupied by Calvert Cayatineto, Burt Trujillo, and Shawn Salt collided with Martin's vehicle. Martin died as a result of injuries sustained in the crash. Her two children survived the accident.

After receiving notification from dispatch of a possible drunk driver, the Navajo Department of Public Safety ("NDPS") pursued the maroon sedan. A multiple-squad car, high-speed chase ensued, ending with the maroon sedan striking Martin's vehicle. At the time of the accident, Cayatineto, Trujillo, and Salt were intoxicated.[1]

Although NDPS officers were at the scene within 40 seconds of the accident,

---

* The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

1. Mr. Cayatineto's blood-alcohol level was .206, and his urine tested positive for marijua-

Trujillo escaped from the automobile prior to NDPS's arrival. NDPS officers observed Salt, unconscious in the back seat of the sedan. The officers also observed Cayatineto in the driver's seat of the sedan, pinned behind the steering wheel with his feet on the pedals. Cayatineto later stated to a medical technician at the accident scene that he was the driver of the sedan.

Several weeks after the accident, NDPS Investigator Mark Cleveland located Trujillo. At this time, Cleveland took several photographs of Trujillo's injuries. After the interview, Cleveland transported Trujillo to a local hospital for examination of his injuries. Defense counsel received a copy of Trujillo's medical-intake form documenting this visit. Defense counsel did not receive copies of the photographs taken by Cleveland. NDPS later misplaced the Trujillo photographs during Cleveland's transition from NDPS.

At trial, Cayatineto denied that he was the driver of the automobile at the time of the accident. Cayatineto testified: "I know for a fact that Burt Trujillo was driving that car; it wasn't me." On cross-examination, Cayatineto testified that he was "very clear" about "every detail" of the car chase.

The prosecution called Trujillo who testified that Cayatineto was driving the automobile at the time of the accident. Trujillo also testified that he fastened his safety belt during the chase with NDPS. At the prosecution's request, Trujillo prepared a sketch of the injuries he sustained in the accident. The drawing depicted a chest abrasion, running from Trujillo's right shoulder to his left torso.

Trujillo also testified that NDPS Investigator Cleveland interviewed him two weeks after the accident and took pictures of his injuries. At this point, defense counsel approached the bench and informed the court that he was unaware of the Trujillo photographs. Defense counsel then requested that the prosecution produce the photographs. The prosecution explained that NDPS had misplaced the photographs. Defense counsel made no objection to the prosecution's failure to produce the photographs.

The prosecution then called Cleveland to testify. Based on his independent recollection of Trujillo's injuries, Cleveland testified to the following:

> Things that I do recall seeing were superficial scars on the—by the collarbone and bruising in the midsection of the chest area and several scratches that appeared to—that he had on his abdomen or—. . . . He did have a bruise or some welt on his head, underneath his hair, and nothing on his face.

Defense counsel did not cross-examine Cleveland concerning the nature of Trujillo's injuries.

The jury found Cayatineto guilty of second-degree murder. The Presentencing Report ("PSR") recommended a two-level enhancement to Cayatineto's sentence under United States Sentencing Guideline ("USSG") § 3C1.1, based on Cayatineto's trial testimony denying that he was the driver of the automobile. Cayatineto objected to the PSR, stating that there was "credible evidence at trial supporting Defendant's testimony that he was not the driver." The amended PSR responded to Cayatineto's objection:

> It was proven in a jury trial that, in fact, the defendant had driven the motor vehicle that killed the victim. . . . In *United States v. Dunnigan*, 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445, the Supreme Court stated in pertinent part,

na. Salt had a near lethal blood-alcohol level of .338.

"Upon a proper determination that the accused has committed perjury at trial, an enhancement of sentence is required by the Sentencing Guidelines." In this case the defendant denied being behind the wheel of the vehicle that collided with the victim's vehicle. It is clear from the evidence in this case, as the jury found beyond a reasonable doubt, that he was the driver of the vehicle that collided with the victim's vehicle, causing her death. The defendant's failure to give truthful testimony on material matters that would greatly affect the outcome of this case warrants a two-level enhancement.

During sentencing, the district court imposed a two-point enhancement to Cayatineto's sentence under Section 3C1.1 stating: "I will adopt the presentence report factual findings and guideline applications. I will expressly find that the defendant obstructed justice by testifying falsely on the material fact of who was driving at the time of the accident." The district court sentenced Cayatineto to 240 months of imprisonment. Cayatineto made no objections to the district court's enhancement at the sentencing hearing.

On appeal, Cayatineto raises three points of error. First, Cayatineto argues that NDPS's failure to preserve the Trujillo photographs violated his due process rights. Second, Cayatineto argues that the district court erroneously enhanced his sentence under Section 3C1.1. Finally, Cayatineto argues that the judgment form in this case erroneously stated that Cayatineto entered a guilty plea to the charges in the indictment. We consider each of these contentions in turn.

## II. DISCUSSION

### A. Whether the Government's Failure to Preserve the Trujillo Photographs Violated Cayatineto's Due Process Rights Under the Fifth Amendment.

■ After Cayatineto discovered that NDPS failed to preserve the Trujillo photographs, he did not raise any objection in the district court. When a party fails to raise an issue in the district court, we may only review for plain error. *United States v. Easter,* 981 F.2d 1549, 1556 (10th Cir. 1992). Even plain-error review, however, "is not appropriate when the alleged error involves resolution of factual disputes." *Id.* Cayatineto's contention that the government's failure to preserve the Trujillo photographs violated his due process rights is a fact-intensive inquiry; accordingly, plain-error review is inappropriate. Therefore, we hold that Cayatineto waived his due process claim.[2]

■ Even if we were to address Cayatineto's due process claim, we find no merit to his contention of a constitutional violation. Failure to preserve potentially exculpatory evidence does not violate the Due Process Clause absent a showing of "constitutional materiality," *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), and bad faith. *See Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Cayatineto points to no evidence of the government's bad faith or evidence that the Trujillo photographs would have, in fact, been exculpatory.

**2.** Because we hold that Cayatineto waived his due process claim by failing to raise it in the district court, we also reject his request for a remand to the district court for an evidentiary hearing on the issue of whether the government acted in bad faith. Cayatineto has failed to show "cause" for his failure to raise the constitutional claim in the district court. *Cf. United States v. Bryant,* 5 F.3d 474, 476 (10th Cir.1993).

In *Trombetta*, the Court refused to reverse the defendant's drunk-driving conviction despite the fact that the State destroyed the breath samples taken by the police at the time of his arrest. 467 U.S. at 491, 104 S.Ct. 2528. The Court reached its conclusion despite the fact that the State introduced the breathalyzer test results at trial. *Id.* at 482–83, 104 S.Ct. 2528. The Court held that, for reversal to be appropriate, the destroyed evidence must be, at a minimum, "constitutionally material." *Id.* at 489, 104 S.Ct. 2528. "To meet this standard ... evidence must both [1] possess an exculpatory value that was apparent before the evidence was destroyed, and [2] be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.*

In *Youngblood*, the Court considered whether a State's failure to preserve semen samples from a victim's body and clothing[3] violated the Due Process Clause. 488 U.S. at 52, 109 S.Ct. 333. The State convicted the defendant of molestation, sexual assault, and kidnaping. *Id.* At trial, the defendant's principle defense was mistaken identity. *Id.* at 54, 109 S.Ct. 333.

The Court rejected the defendant's due process challenge using a two-part analysis. *Id.* at 56–57, 109 S.Ct. 333. First, the Court noted that it would not reverse a criminal conviction based on a State's failure to preserve evidence absent a showing of "constitutional materiality." *Id.* at 56 n. *, 109 S.Ct. 333. "Constitutional materiality" requires more than "[t]he *possibility* that the [destroyed evidence] could have exculpated [the defendant]." *Id.* (emphasis added). In considering the materiality question, the Court considered both (1) the probability of exculpation, in light of other

evidence presented at trial and (2) whether " 'alternative means of demonstrating [his] innocence' " were available to the defendant. *Id.* at 56, 109 S.Ct. 333 (citing *Trombetta*, 467 U.S. at 490, 104 S.Ct. 2528).

Second, the Court held that a criminal defendant seeking reversal must also prove "bad faith" on the part of the government. *Id.* at 56–57 & n. *, 104 S.Ct. 2528. The bad faith inquiry must "necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 56 n. *, 104 S.Ct. 2528 (citations omitted); *cf. Trombetta*, 467 U.S. at 488, 104 S.Ct. 2528 (inquiring whether destruction occurred as part of "a calculated effort to circumvent the disclosure requirements" of *Brady* ).

Under *Trombetta* and *Youngblood*, Cayatineto's due process challenge fails for four reasons. First, Cayatineto offers no evidence of bad faith. *See Youngblood*, 488 U.S. at 57, 109 S.Ct. 333. Although it does appear that the federal prosecutor became aware of the Trujillo photographs *after* NDPS lost them, after-the-fact knowledge of the destruction of evidence does not constitute bad faith. Under *Youngblood*, we must look to "the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56 n. *, 109 S.Ct. 333. In this case, there is no evidence of "a calculated effort to circumvent the [Brady] disclosure requirements;" nor is there any contention that the "exculpatory value [of the photographs] ... was apparent before the evidence was destroyed." *See Trombetta*, 467 U.S. at 489, 104 S.Ct. 2528. Accordingly, Cayatineto

---

**3.** The State failed to refrigerate or freeze the victim's clothing, which contained the semen sample. *Id.* at 53, 109 S.Ct. 333. This destroyed the forensic value of the sample. *Id.* at 54, 109 S.Ct. 333.

has failed to demonstrate bad faith as required by *Youngblood* and *Trombetta*.

Second, there is no evidence indicating that the photographs were exculpatory. *Id.* Cayatineto merely contends that the photographs *may* have depicted a bruise on Trujillo's chest running from his left shoulder to his right torso. This falls short of the constitutional materiality required under *Trombetta*. *Trombetta*, 467 U.S. at 489, 104 S.Ct. 2528. As *Youngblood* makes clear, "constitutional materiality" requires more than "[t]he possibility that the [destroyed evidence] could have exculpated [the defendant]." *Youngblood*, 488 U.S. at 56 n. *, 109 S.Ct. 333.

Third, Cayatineto had other means for obtaining the information contained in the photographs. *See id.* at 56, 109 S.Ct. 333. Cayatineto had ample opportunity to cross-examine both Trujillo and the NDPS investigator who took the photographs, both of whom possessed knowledge relating to Trujillo's injuries.[4] Alternatively, Cayatineto could have obtained the records from Trujillo's hospital visit or questioned the examining physician.[5] Thus, the Trujillo photographs were not " 'of such a nature that the defendant [was] unable to obtain comparable evidence by other reasonably available means.' " *United States v. Gomez*, 191 F.3d 1214, 1218 (10th Cir.1999) (citing *Trombetta*, 467 U.S. at 488, 104 S.Ct. 2528).

Finally, the government presented strong evidence at trial indicating Cayatineto was in fact the driver. NDPS officers observed Cayatineto in the driver's seat of the sedan pinned behind the steering wheel with his feet on the pedals. Further, Cayatineto admitted to a medical technician at the accident scene that he was the driver of the sedan. Thus, in light of the other evidence at trial, it is improbable that the ·Trujillo photographs would have altered the outcome in this case. *See Youngblood*, 488 U.S. at 56, 109 S.Ct. 333.

For these reasons, we hold that the government's failure to preserve the Trujillo photographs did not violate Cayatineto's due process rights.

**B.** *Whether the District Court's Failure to Explicitly State that It Found Cayatineto "Willfully" Perjured Himself Rendered Its Sentencing Enhancement Erroneous.*

■ In reviewing sentencing decisions, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Shumway*, 112 F.3d 1413, 1426 (10th Cir.1997). Under Section 3C1.1 of the Sentencing Guidelines, "[i]f the defendant *willfully* impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, [the district court must] increase the [defendant's] offense level by 2 levels." U.S.S.G. § 3C1.1 (emphasis added). Section 3C1.1's commentary explicitly includes perjury within its prohibition. *See United States v. Dunnigan*, 507 U.S. 87, 92–93, 113 S.Ct. 1111, 122 L.Ed.2d

---

4. Cayatineto contends that Cleveland's direct testimony contradicts Trujillo's depiction of the injuries he sustained in the accident. Cleveland testified that he observed bruising in the middle of Trujillo's chest, abrasions on his abdomen and a welt on the left side of his head. While we cannot determine from the record whether Cleveland expressly adopted Trujillo's pictorial depiction of his injuries, we fail to see how Cleveland's testimony is incon-

sistent with Trujillo having a seat-belt mark running from his right shoulder to his left torso.

5. Trujillo's hospital visit occurred on the same day that NDPS took the Trujillo photographs. According to uncontroverted testimony, Cayatineto received notice of Trujillo's hospital visit.

445 (1993). As *Dunnigan* recognized, a "[w]itness testifying under oath or affirmation violates [the] perjury statute if he gives false testimony concerning a material matter with the *willful* intent to provide false testimony, rather than as result of confusion, mistake, or faulty memory." *Id.* at 94, 113 S.Ct. 1111 (emphasis added). We have previously held that a " 'sentencing court must make a specific finding— that is, one which is independent of the jury verdict—that the defendant has perjured herself.' " *United States v. Anderson,* 189 F.3d 1201, 1213 (10th Cir. 1999) (quoting *United States v. Massey,* 48 F.3d 1560, 1573 (10th Cir.1995). "The required finding must encompass 'all of the factual predicates of perjury,' ... [including] 'falsity, materiality, and willful intent.' " *Anderson,* 189 F.3d at 1213.

In deciding to enhance Cayatineto's sentence under Section 3C1.1, the district court stated: "I will adopt the presentence report factual findings and guideline applications. I will expressly find that the defendant obstructed justice by testifying falsely on the material fact of who was driving at the time of the accident."

Cayatineto claims that the district court improperly imposed the enhancement under Section 3C1.1 because, although the court found that Cayatineto testified falsely on a material fact, it did not expressly find that Cayatineto did so "willfully." According to Cayatineto, "confusion, mistake, or faulty memory was a real possibility in this case given that Mr. Cayatineto was highly intoxicated at the time of the accident and sustained a serious head injury as a result of the accident." We disagree with Cayatineto's contention for two reasons.

First, the district court explicitly adopted the findings contained in the PSR. We acknowledge that the PSR did not expressly find that Cayatineto acted "willfully." The PSR did, however, cite to *Dunnigan,* which defines perjury as false testimony made with "*willful* intent ... rather than as a result of confusion, mistake, or faulty memory." *Dunnigan,* 507 U.S. at 94, 113 S.Ct. 1111 (emphasis added). Further, and most significant for our purposes, the PSR did identify the relevant testimony, " 'so that ... we [may] review the transcript ... [and] evaluate the *Dunnigan* findings of the elements of perjury ... without having to speculate on what the district court might have believed was the perjurious testimony.' " *United States v. Mounkes,* 204 F.3d 1024, 1029 (10th Cir.2000) (citations omitted). So long as a district court identifies the perjurious testimony, " 'fairly conclusory findings that such testimony was ... given with intent to commit perjury' are permissible." *United States v. Pretty,* 98 F.3d 1213, 1221 (10th Cir.1996) (citations omitted).

Based on our review of the record, we are satisfied that Cayatineto perjured himself "willfully," rather than as a result of "confusion, mistake or faulty memory." *See Dunnigan,* 507 U.S. at 92, 113 S.Ct. 1111. Indeed, Cayatineto's testimony belies his assertion of confusion or faulty memory. On direct examination, Cayatineto testified: "I know for a fact that Burt Trujillo was driving that car; it wasn't me." On cross-examination, he specifically testified that he was "very clear" about "every detail" of the car chase. He never alluded to the possibility of confusion or lapse in memory. Cayatineto's testimony clearly demonstrates that he perjured himself "willfully."

Second, numerous cases have rejected a requirement that the district court make explicit findings on every element required under Section 3C1.1 where the district court's ultimate conclusion is clear and the record unambiguously supports its conclu-

sion. *See, e.g., Pretty,* 98 F.3d at 1221 (recognizing that " 'fairly conclusory findings that such testimony was ... given with intent to commit perjury' are permissible," provided that the relevant testimony is sufficiently identified); *United States v. Boggi,* 74 F.3d 470, 479 (3d Cir.1996) ("[W]e will not remand merely because the district court failed to engage in a ritualistic exercise and state the obvious for the record."); *United States v. Tracy,* 36 F.3d 199, 203 (1st Cir.1994) ("On review, the appeals court must be able to ascertain the ultimate finding *and* there must be evidence (regardless of whether it has been specifically identified by the district judge) that would permit a reasonable fact finder to make such a determination."). This accords with the "deference we give to the trial judge, who was able to observe the defendant at trial and was best situated to determine whether [the defendant] was merely confused or was being willfully evasive in order to avoid conviction." *Mounkes,* 204 F.3d at 1030 (citations omitted).

Because we are satisfied that Cayatineto willfully perjured himself regarding a material fact at trial, we affirm the district court's sentence enhancement under Section 3C1.1.

### C. *Judgment Form*

We agree with Cayatineto's contention that the judgment form in this case erroneously stated that Cayatineto entered a guilty plea to the charges in the indictment. Accordingly, we order that the judgment form be amended to show that a jury tried Cayatineto and he did not plead guilty.

### III. *CONCLUSION*

In summary, we DENY Cayatineto's due process claim premised on the government's failure to preserve the Trujillo photographs. We AFFIRM the district court's sentence enhancement under U.S.S.G. § 3C1.1. We also order that the judgment order be amended to reflect Cayatineto's trial by jury.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of