**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 16, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL DON GREENE,

    Defendant - Appellant.

No. 06-5063
(D.C. No. 04-CR-209-01-HDC)
(Northern District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN, HOLLOWAY** and **HOLMES**, Circuit Judges.

Defendant-appellant Michael Don Greene was convicted by a jury of the two counts against him: Count One charged evasion of payment of taxes in violation of 26 U.S.C. § 7201; Count Two charged subscribing to a false tax document in violation of 26 U.S.C. § 7206(1). Defendant was sentenced to 60 months on Count One and 10 months on Count Two, to be served consecutively. He also was fined $250,000 on each count and ordered to pay a special assessment of $100 on each count. Defendant now appeals his convictions and sentence.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

Defendant Greene had been prosecuted in 1996 under Internal Revenue Code (IRC) § 7206(1) for filing a false tax return for the tax year 1990.  He pleaded guilty and served a term of imprisonment of about eighteen months.  He was released from prison on supervised release in early 1998.

Count One of the indictment in the current case alleged that during the time from August 1998 to November 29, 2002, Defendant willfully attempted to evade payment of "a large part of the income tax due and owing by him" for the calendar years 1990, 1991, 1994 and 1995 in an amount of more than $641,000 in three ways: "by concealing and attempting to conceal . . . the nature and extent of his assets, by placing funds and property in the names of nominees, and by filing a false and fraudulent offer in compromise (supported by a false declaration under oath on Form 433-A)."[1]

Count Two of the Indictment focused on the allegation of a false declaration under oath, charging it as a separate crime under 26 U.S.C. § 7206(1).  That count more specifically charged that the sworn Form 433-A, which Defendant submitted on January 19, 2000, called for the Defendant to list all of his assets, but that he knowingly omitted from the form four specific assets.  These omitted assets included three bank accounts, which were described by the name of the bank, the account number and the balance as of

---

[1]The allegations were later narrowed to cover only the years 1990 and 1991.  I App. 106.

the date of the sworn statement (which totaled more than $290,000). The fourth omitted asset was described as a note in the amount of $85,000 payable to Defendant doing business as VK Investments.

Trial of this case took about two weeks, with almost thirty witnesses testifying, including some two dozen for the prosecution. Because the issues on appeal can be understood without an exhaustive review of that evidence, we will provide only a general description of Defendant's conduct as it was established at trial. The allegations of Count Two concerning bank accounts and their respective balances on the date of the Defendant's submission of the false Form 433-A were proven through one IRS special agent's testimony that bank records, admitted in evidence by stipulation in the government's case, showed that the accounts had the balances as alleged. The records showed that one of the three accounts was in the name of Defendant Greene doing business as Delta Trading Group, and the other two were joint accounts in the names of Defendant and Virginia McAlister, who is Defendant's mother.[2]

As to the note specified in Count Two, the government called Ms. Diana Ness, formerly Randolph, who had been in a romantic relationship with Defendant from sometime in 1998 to December 2000. During this time, Defendant made a loan of

---

[2]This seems to be the case, looking at questions asked of Defendant's former accountant, Mr. Raymond Gardner, who testified for the government. III App. 907-08; 910-11. Elsewhere in the record, however, it appears that one of the accounts might have been a joint account for Defendant and his former girlfriend. The jury had the actual bank records before them, but our record does not include those exhibits. In any event, no issue is raised about this detail, and it seems to be immaterial.

$85,000 to her so that she could buy a house. The transaction was duly documented and Ms. Ness executed a note and a mortgage to secure the debt. Although Defendant was extremely lenient about her payment schedule, Ms. Ness testified that she expected to repay the loan and did begin making monthly payments in early 2001.[3]

The government produced considerable evidence to show that Defendant had concealed assets, in part by placing assets in the names of nominees, as alleged in Count One. Although it is not entirely clear from the record (and in any event is not material to the charges), it appears that the source of much of Defendant's income was his business, which was the distribution of oilfield couplings. Several employees of the business testified that the company carried on rather normally during Defendant's incarceration.

In addition to depositing funds in accounts that he held jointly with his mother or in the name of a company of which he was sole proprietor, as described *supra*, Defendant attempted to conceal very substantial sums as business expenses, which he converted to cash. Before going to prison, Defendant had arranged for one of his suppliers to give him a number of blank invoices. Defendant filled out some of these invoices to reflect false charges against his company, when in fact there had been no legitimate expense. Company checks were then written in payment of these false invoices. Defendant delivered or arranged delivery of these checks to Sultana Exchange, a check-cashing

---

[3]Defendant suggested that re-payment prospects were highly doubtful and that the jury should therefore have found reasonable doubt as to whether he was willfully failing to disclose this asset. But this argument had the obvious flaw that it did not account for the Defendant's interest as mortgagee.

service in Houston where he had done business before and whose proprietor apparently cashed any check Defendant produced.[4]  When the proprietor, Mr. Ruiz, died during the course of these transactions, the practice continued as his widow operated the business with the assistance of a long-time employee, Mr. Franco.  Both the widow and Mr. Franco testified in the government's case.

Defendant also used the services of Sultana Exchange to cash company checks written to a number of other businesses unrelated to his company.  In these instances, Defendant simply used the name of an existing company as payee on the check, then relied on the compliant practices of Sultana Exchange to cash the check himself. Representatives of several companies whose names had been used in this way testified at trial.  Each of these witnesses identified his company's name on one or more checks written by Defendant and testified that the company had done no business to warrant payment and had not, in fact, received the checks or the proceeds thereof.

IRS case agent Scott Wells prepared exhibits summarizing the checks Greene had cashed through Sultana Exchange.  His conclusion was that during the time covered by the indictment, Defendant had cashed checks totaling $742,190.70.  All checks were for amounts less than ten thousand dollars and thus not subject to cash transaction reporting requirements.

---

[4]It appears that during his incarceration Defendant either had an employee mail checks to Sultana, or had the checks presented by Howard Bring, the business associate who had supplied the blank invoices.  Mr. Bring testified to presenting some checks, but said that he did not receive the proceeds.  The indictment alleged only acts occurring after Defendant's release from prison.

**II**

On appeal Defendant presents a four-pronged attack on the indictment. He contends that the prosecution violated his double jeopardy rights, that the indictment was multiplicitous, and that the indictment was duplicitous. Additionally, Defendant argues that by bringing the indictment the government violated the terms of the plea agreement he had entered into in the 1996 case.

**A**

Defendant contends that the indictment was multiplicitous because he was "essentially convicted in both counts of committing a single act, filing a false Form 433-A . . . ." Opening Br. of Aplt. at 39.[5] This court reviews claims of multiplicity de novo. *United States v. Nickl*, 427 F.3d 1286, 1301 (10th Cir. 2005).

"Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior. . . . . In reviewing multiplicity claims we look to the language of the statute to determine whether Congress intended multiple convictions and sentences under the statute." *United States v. Meuli*, 8 F.3d 1481, 1485 (10th Cir. 1993) (internal citations and quotation marks omitted). "If Congressional intent cannot be discerned, we apply the well-settled 'rule of statutory construction' set forth in *Blockburger v. United States*, 284 U.S. 299 (1932) . . . ." *United States v. Morehead*, 959 F.2d 1489, 1506 (10th Cir. 1992), *aff'd on reh'g en banc sub nom. United States v. Hill*, 971 F.2d 1461 (10th Cir. 1992).

---

[5]This contention ignores the fact that the jury specifically found that Defendant had committed the offense charged in Count One by three means, not merely by filing the false form. But we consider the contention anyway.

Under the *Blockburger* test, "[t]he same act or transaction may constitute separate offenses if each offense requires some fact not required to establish the other." *Meuli*, 8 F.3d at 1485. The government may submit multiplicitous charges to the jury, but if a defendant is convicted of both charges, the district court must vacate one of the convictions. *See Ball v. United States*, 470 U.S. 856, 864-65 (1985); *Nickl*, 427 F.3d at 1301.

In several closely related contexts – challenges based on double jeopardy, challenges based on multiplicity, and contentions regarding the propriety in a given case of instructing the jury on lesser included offenses – the courts have considered the Internal Revenue Code's criminal tax enforcement provisions at issue here. Essentially the same *Blockburger* analysis has often been employed in these three contexts, all of which are raised by Defendant's counsel in this appeal, albeit in his extremely conclusory fashion. We are not aware of any case in which a court has resolved the question at the first step, finding clear evidence of Congressional intent without resort to the *Blockburger* analysis. *See United States v. Kaiser*, 893 F.2d 1300, 1304 (11th Cir. 1990) (finding statutory language of sections 7201 and 7206(1) lacked "clear and unambiguous language allowing cumulative convictions and punishments").

Applying the *Blockburger* test, we are instructed not to focus on the specific facts of the case, but to examine the statutory language. *Schmuck v. United States,* 489 U.S. 705, 715-21 (1989). In *Schmuck*, the Court said, *inter alia*, that the elements test is "certain and predictable" because it "involves a textual comparison of criminal statutes

-7-

and does not depend on inferences that may be drawn from evidence introduced at trial . . . ." 489 U.S. at 720.

The question, then, is whether each offense, Count One and Count Two, required "some fact not required to establish the other," as we put it in *Meuli*, 8 F.3d at 1485.

As to Count One, charging evasion of payment of taxes in violation of IRC § 7201, the Court has said that there are three elements of the crime of evasion under section 7201: willfulness, the existence of a tax deficiency, and an affirmative act constituting an evasion or attempted evasion of the tax. *Sansone v. United States*, 380 U.S. 343, 351 (1965).

As to Count Two, charging violation of IRC § 7206(1), the jury was instructed that the government must prove five elements: first, "that the defendant made, signed or filed a form 433-A, statement of assets, together with his offer-in-compromise, that contained false information or omitted information as to a material matter"; second "that the defendant knew that this information was false"; third, "that the statement was material"; fourth, "that the document(s) contained a written declaration that it was being signed subject to the penalties of perjury"; and fifth, that defendant acted willfully in filing the false document. I Aplt. App. at 121-22.[6]

It is readily apparent that each offense requires proof of at least one fact not

---

[6]We consider the elements of the offense charged in Count Two as they were explained to the jury in the trial court's instructions because neither party has suggested any error therein and the trial court's formulation appears to be consistent with the statutory language.

required by the other. The evasion charge, Count One, requires proof that a substantial tax was owed and that the defendant intended to evade payment of that tax; neither of these are required to prove Count Two. Count Two requires proof of knowingly signing a false statement under oath, which is not required to prove the evasion count.[7]

The two offenses were not the same; we therefore hold that the indictment was not multiplicitous.

**B**

Defendant contends that Count One was duplicitous because it charged both evasion of taxes and submitting a false declaration under oath. This argument is without merit. Duplicity is the joining of two or more offenses in one count, thus creating the possibility that the jury could convict without agreeing unanimously on guilt for the same offense. *United States v. Haddock*, 956 F.2d 1534, 1546 (10th Cir. 1992). But where the evidence is sufficient to prove one of two charged offenses, even a general verdict may be upheld. *See United States v. Haber*, 251 F.3d 881, 888-89 (10th Cir. 2001) (citing *Griffin v. United States*, 502 U.S. 46, 56-57 (1991)). In this case, of course, the trial court extended more than the minimal protection to the defendant by submitting a special verdict form, which elicited specific findings that Defendant was guilty of evasion as charged in Count One because he had concealed assets. Accordingly, there is no error and no possible prejudice.

---

[7]Because the jury specifically found Defendant guilty of evading taxes by concealing his assets and by placing assets in the names of nominees, the allegation in Count One regarding the false sworn statement may be regarded as mere surplusage.

# C

Defendant contends that he was subjected to double jeopardy in violation of the Fifth Amendment. His argument is based on the fact that he had been previously convicted of filing a false tax return for 1990, in violation of IRC § 7206. He was not charged with filing a false tax return in the current prosecution, however, but with attempting to evade the payment of the tax deficiency for that year (and 1991) by concealing his assets and submitting an offer in compromise on Form 433-A which included materially false statements about his financial status. Our analysis of his multiplicity argument, *supra*, has shown that the tax evasion charged in Count One was not the same offense as that charged in Count Two of the current case, which was the filing of the false Form 433-A. By the same analysis, the evasion charged in Count One, based on Defendant's actions from 1998 to 2002, is not the same offense for which he was prosecuted in 1996, which was filing a false tax return for tax year 1990.

Greene fails to overcome the obvious differences between the charge to which he pleaded guilty in the 1996 case and the charges in the instant case, which are based on his later conduct. He avers that he was ordered to pay restitution for the same taxes in the previous prosecution. (He does not aver that he in fact *did* pay restitution.) But he does not allege that the government is trying to collect the overdue and evaded taxes twice, nor does he provide any authority to support the implication that the restitution portions of the

two judgments violate his double jeopardy protections.[8]  We therefore reject this argument.

## D

Mr. Greene also contends that his prosecution in this matter violated the government's commitments made to him in the 1996 plea agreement, which resolved the previous prosecution.  We review de novo whether the government has breached a plea agreement.  *See United States v. Werner*, 317 F.3d 1168, 1169 (10th Cir. 2003).  General principles of contract law govern the prosecution's obligations under a plea agreement.  *See United States v. Guzman*, 318 F.3d 1191, 1195 (10th Cir. 2003).  We examine the express language of the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea.  *See United States v. Rockwell Int'l Corp.*, 124 F.3d 1194, 1199 (10th Cir. 1997).  "Where a plea is predicated in any significant degree on a promise or agreement, such promise or agreement must be fulfilled to maintain the integrity of the plea."  *United States v. Greenwood*, 812 F.2d 632, 637 (10th Cir. 1987) (quoting *United*

---

[8]Defendant makes an assertion (unfortunately, but typically, a bare assertion rather than an argument) that he was subjected to double jeopardy because "the charged conduct had been factored into his earlier sentence in 1998."  Opening Br. of Aplt. at 38.  If that were true, it would not establish a double jeopardy violation.  *See Witte v. United States*, 515 U.S. 389, 395-406 (1995).  But the assertion manifestly is untrue and even non-sensical.  The charged conduct in this case did not occur until after Defendant had served his term of incarceration under the sentence imposed in the earlier case.  What Defendant apparently means and does say in the following sentence is that the court in deriving the sentence in the earlier case under the sentencing guidelines, took into account the tax deficiency for the years 1989 through 1991.  But the suggestion that this subjected him to double jeopardy is similarly untenable because of the holding of *Witte*.

*States v. Reardon*, 787 F.2d 512, 516 (10th Cir. 1986)).

Greene relies on this provision from the 1996 plea agreement:

**(B)    THE GOVERNMENT'S OBLIGATIONS**

Only if the defendant fully satisfies his obligations outlined in this pleading, the government agrees:

**FURTHER PROSECUTION**

It shall not initiate additional criminal charges against the defendant in the Northern District of Oklahoma that, as of the date of the defendant's acceptance of this agreement, are known to the government and arise from its investigation of the defendant's actions and conduct giving rise to the instant Information.  The defendant understands, however, that this obligation is subject to all "Limitations" set forth below and that this Office is free to prosecute the defendant for any illegal conduct (i.e., violation of federal criminal laws) not discovered by or revealed to the government during its investigation or occurring after the date of this agreement. Specifically, the government agrees that, as a result of this agreement, it will be barred from criminal prosecution of the defendant for any violations of the income tax laws for the calendar years 1989, 1991, 1992, 1993 and 1994.

I Aplt. App. 14-15.

Defendant points to the last sentence of the agreement, which favors his position, and ignores all other language.  But as noted, plea agreements are contracts to be interpreted according to the principles of contract law, *Guzman*, 318 F.3d at 1195, and a cardinal principle of contract law is to construe agreements so as to give effect to every term, if possible.

The government clearly promised to refrain from further prosecution for conduct "known to the government" at the time.  The current prosecution is, of course, based on

Defendant's conduct beginning more than two years after the date of the agreement. We find no support for Defendant's contention that the government expressed the intention in the 1996 agreement that it would be completely barred from prosecuting Defendant for his *future* efforts to evade payment of the taxes he owed for 1990 and 1991, no matter what nefarious and criminal means the Defendant might employ to accomplish the evasion. Indeed, the agreement explicitly provides that the government is "*free to prosecute the defendant for any illegal conduct* (i.e., violation of federal criminal laws) not discovered by or revealed to the government during its investigation or *occurring after the date of this agreement.*" (Emphasis added.) We hold that the plea agreement was not breached by the government.

### III

Mr. Greene's next contention is that the evidence was insufficient to sustain the conviction on Count One because the evidence failed to show that the IRS had made a valid assessment and that there was a legitimate deficiency. The brief also includes some statements regarding the element of willfulness, the point of which is not entirely clear. We take it that Defendant is suggesting that the alleged failure to prove a legitimate deficiency necessarily negated the possibility of finding willfulness. In any event, because the evidence was sufficient to show that a substantial tax was owed, this argument is without force.

We begin with the principle that the government in an evasion case is not required to prove the exact amount of tax owed. *See United States v. Mounkes*, 204 F.3d 1024,

1028 (10th Cir. 2000); *United States v. Harrold*, 796 F.2d 1275, 1278 (10th Cir. 1986).

Much of Defendant's argument is defeated by this single point, for the argument emphasizes certain inconsistencies and alleged technical problems with the notices of deficiency and other communications that the IRS sent to Defendant in the course of trying to collect the taxes he owed. Thus, Defendant contends that a valid assessment must, according to the IRS's regulations, be signed by an "assessment officer," and that in this case the government failed to show that the employee who signed one or more of the assessments had been validly delegated the authority to do so.

But this is clearly a red herring. The technical requirements Defendant invokes may be essential in civil collection actions such as the authorities Defendant cites, but they are simply not required of the government in a prosecution like this for evasion. In *Mounkes*, we explained that indirect methods of proving income are permitted because direct proof requires the taxpayer's voluntary retention of records, which is often thwarted by the taxpayer. 204 F.3d at 1028. Because the government may have to resort to indirect methods of proving income, it necessarily follows that the government is not required to show the precise amount of tax owed, for the same reasons. In this case, the government did not rely on the indirect method of proving income but instead introduced considerable evidence from IRS employees regarding their efforts to calculate the tax owed, and the issuance of notices and other communications to the Defendant in connection with these efforts. Although the notices were inconsistent, the evidence was more than sufficient to show that a substantial amount was owed – which, again, is all

-14-

that is required – and that Defendant willfully acted to evade payment of his obligations through the means charged in the indictment and found by the jury in response to the special verdict form.[9]

## IV

Defendant next contends that the trial court's adverse rulings on several evidentiary matters effectively denied him an opportunity to present his defense. Defendant alleges the following as specific errors: the decision to exclude proffered testimony of Mr. Michael Deeba, who was identified as an expert witness in the area of taxation; the exclusion of the testimony of Mr. David Spicer; restrictions on defense counsel's cross-examination of Mr. Raymond Gardner; and restrictions of the direct examination of defense witness Michael Blessington.

"The right to present a defense is a fundamental element of due process of law. However, the right to present defense witnesses is not absolute. A defendant must abide the rules of evidence and procedure. This includes standards of relevance and materiality." *United States v. Bautista*, 145 F.3d 1140, 1151-52 (10th Cir. 1998) (internal citations and quotation marks omitted). We review evidentiary rulings of the district court under the abuse of discretion standard. *See United States v. Dowlin*, 408 F.3d 647, 659 (10th Cir. 2005). "The question of whether a constitutional violation has occurred is

---

[9]Former special agent William Ray Dingman testified that he and another agent interviewed Defendant in his home in October 2001 regarding the offer in compromise that Defendant had submitted. In the course of that interview, Dingman testified, Defendant said that he "probably" owed "no more than $40,000." III Aplt. App. 1090-91. Even that very much under-estimated figure is clearly "substantial."

reviewed de novo." *Id*.[10]

**A**

Defendant asserts that Mr. Deeba would have testified about three points: that various notices sent from the IRS to Defendant during the relevant time were inconsistent; that the IRS had not properly adjusted Mr. Greene's tax liability because it had failed to deduct costs of goods and expenses and had not allowed credit for tax payments previously made on the same income by the corporate entity, MDG, Inc; and that the innocent spouse relief granted to the former Mrs. Greene resulted in an increase in his alleged tax liability without his knowledge. All of this, Mr. Greene argues on appeal, should have been admitted to show that he had a good faith belief that he did not owe additional taxes. This is the totality of the argument. It is not persuasive.

First, defendant does not address one basis of the trial court's ruling regarding the inconsistent notices. The judge accepted the government's argument that the jurors could determine for themselves that defendant had received notices stating different amounts as the balance of taxes owed. We agree that the opinion evidence of an expert would not meet the threshold requirement of being helpful to the jury on this point.

Additionally, as we read the trial judge's oral comments the judge ruled that the anticipated testimony was irrelevant for all of the purposes for which it was proffered.

---

[10]Defendant's brief does not show that the constitutional issue was presented to the district court. Because we find the argument unavailing in any event, we review under the de novo standard, rather than the much more rigorous plain error standard that appears to be applicable.

Defendant contends that the expert's testimony should have been admitted as relevant to his state of mind. As we understand it,[11] the expert would have testified that Defendant received a number of notices from the IRS which gave different figures for his tax liability (a fact that had been shown by the government's evidence by the time the defense actually presented its case); that some of the income that the IRS was attributing to Defendant had been reported by MDG, Inc., which had also paid taxes on those sums; and that Defendant had negotiated an agreement in settlement of post-divorce litigation with his ex-wife whereby she was to pay $250,000.00 on the couple's joint tax liability for one of the years in question, but that the former Mrs. Greene had instead obtained from the IRS "innocent spouse" status which relieved her of most of the liability.

The expert, however, had not been advising Mr. Greene at the time of the events at issue but was retained solely to testify at trial. Thus, Mr. Deeba could not have given any testimony (even assuming it would otherwise have been admissible) about conversations with Defendant or actions taken by Defendant that would actually have been probative of Defendant's state of mind. Instead, Defendant argued in the trial court that the testimony would have been relevant "to a person's state of mind, any person that would . . . ." But the trial judge cut off this argument, noting that the relevant legal issue was Defendant's

---

[11]Because defense counsel did not give notice of the intent to call Mr. Deeba until a few days before trial, the record consists only of the government's motion in limine (which addressed only the timeliness matter, as the defense still had not disclosed a summary of the expected testimony, I Aplt. App. 55-57) and the transcription of oral argument on the matter on the morning of trial. The record does not indicate that the district judge excluded the testimony because of the untimely disclosures of the witness's identity and summary of expected testimony.

wilfulness and that an objective, reasonable person standard did not apply. Defense counsel conceded that point. I Aplt. App. at 225.

The trial judge also ruled that proffered expert testimony that the IRS had erred in attributing to Mr. Greene income that had been recognized and reported by his corporate entity was irrelevant because, as defense counsel conceded, this evidence would not have supported a defense to the charge, and as with the other proposed areas of expert testimony, the defense could not show Mr. Greene's subjective good faith by the testimony of an expert who had no dealings with Mr. Greene at the relevant time.

Defendant has not advanced anything more on appeal. Indeed, he presents no real argument at all, just a declaration that the expert's testimony was crucial to explain that he had a good faith belief that he did not owe additional taxes. But we see no abuse of discretion in the trial judge's ruling that the proffered testimony simply would not have had any probative value as to the subjective state of mind of Mr. Greene. Nor does Defendant on appeal undertake to challenge the trial judge's reasoning that errors, if any, in the IRS's calculation of amounts owed do not excuse the conduct charged in this indictment.

**B**

Defendant called Mr. Spicer, he says, to testify concerning a seminar that he had attended with Defendant. At this seminar Defendant received some tax protestor literature, some of which he sent to the IRS about a year later along with a letter regarding his dispute. The government had introduced the letter with the enclosed tax protestor

literature as an exhibit in its case. Mr. Spicer's testimony, Defendant's appellate brief says, was "intended to counter the prejudicial perception of Mr. Greene as a 'tax protestor.'" This is the entirety of the argument on this point. Opening Br. of Aplt. at 47.

The closest thing in the record to an offer of proof is the transcript of the bench conference at trial discussing the government's objection to the anticipated testimony of Mr. Spicer. Defense counsel said that he "wanted to show where he got [the letter] to give the jury some understanding about at least the fact that Mr. Greene didn't create the letter." And the attorney said:

> The Government offered this [tax protestor letter] into evidence to try to show that Mr. Greene was using that to attempt to evade and defeat the payment of tax. I simply wanted the jury to hear where the letter came from, that [Mr. Spicer] got one too and that he was with Mr. Greene . . .

IV Aplt. App. 1210. The judge then interrupted counsel to ask how the proffered testimony was relevant. The defense attorney replied, in part: "I wanted to get in just to the general subject of the seminar. Went to a seminar, what was the general subject, did they give you the material, have you seen similar documents, do you know whether or not Mr. Greene got a document at that seminar." *Id.*

The judge said that where the materials had been received was not relevant to this case. Defense counsel has never given a satisfactory response to that point. The judge made it clear that he did not think that a friend who had been at the seminar when Defendant received the protestor literature could give testimony that would be probative on the Defendant's state of mind when he forwarded that literature to the IRS about a year

later.  We likewise fail to see the relevance, and no cogent argument had yet been advanced in an attempt to show relevance.

We see no abuse of discretion in the disallowance of this testimony.

**C**

Defendant next appears to assert that restrictions on his cross-examination of his former accountant, Mr. Raymond Gardner, were an abuse of discretion that hampered Defendant's ability to present his defense.  We say "appears to assert" because the brief's comments on this witness are so attenuated as to be cryptic.  We are told only that "Mr. Gardner testified that he disagreed with IRS auditor Harmon's additional assessments reflected in Government exhibit 28, but the Government objected to the question as being irrelevant and the Court sustained the objection"; and that "The Government objected to questions relating to a notice from the IRS dated October 9, 2000, as being irrelevant, and the Court sustained the objection."  These two sentences are preceded by a general assertion that the trial court "did not permit several questions, which had a direct bearing on Mr. Greene's state of mind."  Opening Br. of Aplt. at 48.

This again appears to be merely an argument that Mr. Greene had sincere disagreements with the calculation of his liability, to the point that he purportedly did not believe that he had any additional liability.  But no argument is made that a sincere disagreement with the computation of one's tax liability is a defense at law to the charges; the contention instead is one distinct from that – that such a disagreement is relevant to Defendant's willfulness.  Moreover, the government correctly points out that Defendant's

offer of proof (to the extent there is one) does not show that any opinion Mr. Gardner may have had about the additional assessments was communicated to Defendant, and therefore could not have been relevant to Defendant's state of mind.  Thus, Defendant has failed to show an abuse of discretion in the exclusion of this evidence.

**D**

Mr. Greene similarly complains of restrictions that the trial judge enforced in his counsel's direct examination of Mr. Michael Blessington, a defense witness and an attorney who had represented Mr. Greene in tax matters during the years at issue in this case.  No argument is advanced in the two-thirds of a page in the brief which addresses Mr. Blessington's testimony.  Instead, we are merely told what rulings the trial judge made:  first, Mr. Blessington testified that Mr. Greene had asked him to file a petition in the tax court (presumably to contest one or more of the notices of liability) but that the witness did not file such a petition, and the trial judge would not allow the witness to explain the reason for the failure; second, that the witness had told Defendant about the IRS problems resolution office in Oklahoma City, but that the court had not allowed the defense to introduce in evidence the document that had been filed with that office in an attempt to settle the tax issues; third, that Mr. Blessington was not allowed to testify whether Defendant's tax liability for the years in question would have been satisfied had the former Mrs. Greene paid the $250,000.00 that she had, at one time, agreed to pay; and fourth, that the witness was not permitted to answer whether he disagreed with the assessment by the IRS.  The only thing approaching an argument that is presented on

these points is the conclusory statement that the document submitted to the problems resolution office was "highly reflective" of Defendant's state of mind.

As to the reason for the failure to file a tax court petition, the government asserted at trial that Mr. Blessington could not answer that question without reference to inadmissible hearsay. There has been no attempt to rebut that assertion as far as we are aware. The fact that the Defendant had made some efforts to resolve his tax liability was made clear at trial; we do not see any prejudice to the Defendant from the refusal to introduce in evidence the document filed with the problems resolution office, nor has Defendant clarified what additional points the proffered exhibit would have shown.

We see no abuse of discretion in the trial judge's refusal to allow Mr. Blessington to answer whether in his opinion Defendant's tax liability would have been satisfied had the former Mrs. Greene made the payment she apparently had agreed to make. She did not make the payment. There is no offer of proof as to how the witness would have answered the question had his response been allowed, and no showing that he could have answered the question. *See* Fed. R. Evid. 103(a)(2). The same is true regarding the question whether Mr. Blessington agreed with the additional assessment(s) the IRS had made. We do not know if he would have claimed to have had sufficient information to answer the question, nor how he would have answered it. And, as the trial judge repeatedly made clear to counsel, disagreement with an assessment is not a defense to the charges in this case.

**V**

Defendant contends that limitations on his attorney's cross-examination of government witnesses effectively impinged on his right of confrontation. Again, Defendant makes multiple assertions of error, with only the slightest effort to convey to this court why he asserts that the rulings were in error and what the evidence would have shown, if admitted. *See* Fed. R. Evid. 103(a)(2).

First among the Defendant's points on cross-examination of government witnesses is the trial judge's refusal to admit into evidence two internal IRS documents which, Defendant asserts, showed that he owed no additional taxes for 1990 and 1991. But that is not what the documents represented,[12] as counsel is well aware, and because these documents were never seen by Defendant, they have no relevance on his supposed good faith "attempt to protect his assets from unjustified seizure by the IRS," as the brief describes the defense theory of the case.

We will not address the merits of Defendant's complaints regarding his re-cross-examination of Agent Baustert because the brief does not even contain a coherent assertion of error. We are told that the trial judge *sua sponte* limited the questioning, but counsel never made an adequate offer of proof. *See* Fed. R. Evid. 103(a)(2). When counsel attempted to make an offer of proof, he addressed two separate lines of inquiry he

---

[12]As the witness explained, these documents reflected the way that the IRS internally represented the tax status of Defendant and in particular, the fact that Defendant and his then-wife had filed jointly for the years in question and that the ex-spouse had later been granted "innocent spouse relief" for those years. The evidence was quite clear that the proposed exhibits in isolation did not represent the true status of the agency's investigation of Defendant's liability at any time.

had wanted to pursue. As to the first, his offer of proof showed specifically that he wanted to ask the witness to repeat something he had already said. There is no abuse of discretion in disallowing testimony that is repetitious. When counsel attempted to make his offer of proof on the second line, the judge informed counsel that his proffer was based on a mischaracterization or misunderstanding of what the witness had earlier said. The judge specifically told counsel that his offer of proof was therefore unacceptable in the form of the attorney's summary of what he expected the witness to say. The judge explained that counsel would have to re-call the witness (outside the presence of the jury) to show that the witness would indeed have testified consistently with counsel's representation. Counsel never requested that the witness be re-called. The trial judge was more familiar with the testimony than we are, and we do not find an abuse of discretion on this record.

Defendant also complains of restrictions on the cross-examination of IRS case agent Scott Wells. He says that counsel was not allowed to show the witness a document to refresh his recollection and that, at another point in the cross-examination, the judge *sua sponte* cut defense counsel off. The brief follows with two paragraphs of quotes from the caselaw on the importance of the right of cross-examination in criminal trials, but nothing about the relevance or importance of *this* cross-examination in *this* trial.[13]

_____

[13]We are not even told the subject area from which counsel was restricted; apparently we are expected – again – to determine this from the record and to formulate the argument ourselves. This grows increasingly wearisome as we slog through the many "issues" raised in this appeal. Counsel would do well to heed the so often repeated advice to winnow out the weaker arguments.

In particular, the cross-examination was limited by the trial judge when the Defendant's attorney tried to get Agent Wells to go into technical details about the internal processes of the IRS. The judge said that this went beyond the scope of direct examination. Because the brief makes no attempt to demonstrate that this was proper cross-examination, and because the defense was clearly able to explore that topic in some depth with several other witnesses from the IRS, we will not go further and try to search out an abuse of discretion on this point.

At another point, the trial judge *sua sponte* limited the cross-examination when Agent Wells had made it clear that he had no knowledge about the subject that defense counsel was trying to explore, the innocent spouse relief that had been granted to Defendant's ex-wife. Again, the brief makes no attempt to explain why this was an abuse of discretion, and the subject was one that was brought up by defense counsel with several other witnesses.

In short, Defendant has failed to show any abuse of discretion and certainly has fallen far short of showing an infringement on his constitutional right to confront the witnesses against him.

**VI**

Defendant maintains that the court erred in refusing to give certain jury instructions that, the brief says without citation of record support, were requested. Defendant says that he requested lesser included offense instructions as to each charge and that he requested instructions on advice of counsel and advice of accountant defenses.

As to the lesser included offense instructions, the "argument" on this point consists of two conclusory and redundant sentences: "Under the evidence in this case, the jury should have been given the opportunity to consider the lesser-included offenses. Those instructions should have been given." This is followed by citation to a string of cases, without any explanation of how the cases might be comparable. This is insufficient to present the issue for review, and we decline to make this argument for the Defendant. *See American Airlines v. Christensen,* 967 F.2d 410, 415 n.8 (10th Cir. 1992).

To show that he was entitled to a lesser included offense instruction, Defendant must show four things.

> First, the defendant must make a proper request; second, the lesser included offense must contain some but not all of the elements of the charged offense; third, the elements differentiating the two offenses must be in dispute; and fourth, the evidence must allow the jury to rationally acquit the defendant on the greater charge and convict on the lesser charge.

*United States v. Brown*, 287 F.3d 965, 974 (10th Cir. 2002).

Determination whether the trial court erred in refusing the instructions in this case is not a simple matter with a clear resolution. Several subordinate issues rather quickly emerge on consideration of the question. We decline to go into this analysis based on Defendant's cursory and inadequate presentation. "The appellant's brief must contain . . . (9) the argument, which must contain: (A) appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]" Fed. R. App. P. 28(a)(9)(A).

Defendant offers only slightly more in his brief to support the contention that the

trial court should have given instructions on the reliance on advice of counsel and reliance on advice of accountant. As to these issues, however, it is readily apparent that the trial court did not err.

To be entitled to the instructions, Defendant would have had to show that he had made full disclosure to the professional. *See United States v. McIntosh*, 124 F.3d 1330, 1337 (10th Cir. 1997) (advice of counsel in bankruptcy fraud prosecution); *United States v. Wenger*, 427 F.3d 840, 853 (10th Cir. 2005) (advice of counsel in securities fraud prosecution); *United States v. Duncan*, 850 F.2d 1104, 1117 (6th Cir. 1988) (advice of accountant defense in prosecution for filing a false tax return). Defendant has not provided citations to the record to show that he introduced evidence of full disclosure to either professional, and we have found no such evidence. Indeed, there was testimony from the accountant that defendant had not disclosed the existence of the bank accounts and the note listed in Count Two as omitted from the statement accompanying Form 433-A.

Defendant has also failed to point to evidence that either professional provided advice on which he relied. Defendant notes that he asked his attorney and his accountant to contest the deficiency notices in the Tax Court but they failed to do so. But the failure to perform an act is not the same as giving advice. Here again, Defendant's brief fails to cite the portions of the record that would support the argument. We certainly did not find, in our independent review of the trial transcript, any suggestion that either professional advised Mr. Greene that he could omit assets in the financial statement he attached to his

sworn offer in compromise; nor did we find evidence that either professional advised Mr. Greene that he could lawfully avoid paying the taxes owed by placing assets in the hands of nominees and otherwise concealing his assets.

Defendant may have relied on his accountant and his attorney in the colloquial sense, but we are aware of no evidence that he relied on their professional advice in the conduct for which he was charged and convicted. Defendant was therefore not entitled to the instructions requested.

**VII**

Defendant also challenges the sentence imposed by the district court, raising several points. While we review the sentence itself for reasonableness, *see United States v. Booker*, 543 U.S. 220, 261-63 (2005), in considering underlying sentencing issues we review a district court's factual findings for clear error but its legal determinations de novo, *see United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006).

Defendant first contends that the trial court should not have made findings of fact at sentencing, based on his view that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny require that any facts which raise the offense level calculated under the advisory Sentencing Guidelines must be found by a jury. This argument has been rejected many times by this court. *See, e.g., United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir. 2005). There was no error in the trial judge's reliance on a post-verdict calculation of the amount of tax loss as a part of the process of calculating the advisory guidelines range.

Defendant asserts that interest and penalties should not have been included in the calculation of the tax loss. He points to USSG § 2T1.1(c)(3), which provides: "If the offense involved willful failure to pay tax, the tax loss is the amount of tax that the taxpayer owed and did not pay." The district court, however, relied on Application Note 1, which provides that the tax loss does not include interest and penalties "except in willful evasion of payment cases under 26 U.S.C. § 7201 and willful failure to pay cases under 26 U.S.C. § 7203."[14] Defendant contends that this is an "apparent discrepancy" which should be resolved in his favor, apparently invoking the rule of lenity. But we see no ambiguity. The first provision cited by Defendant is applicable to failure to pay cases, not evasion cases. The application notes have the force of law unless they are inconsistent with the guidelines themselves or other law. *Stinson v. United States,* 508 U.S. 36, 38 (1993). We therefore conclude that the district court did not err in applying the plain language of Application Note 1.

Next, Defendant challenges the calculation of the tax loss. His challenge focuses on the fact that the government's witness at the sentencing hearings, IRS agent Bob Dean, testified that he and the co-worker who assisted him in the task came to different conclusions. Defendant also says that Mr. Dean gave yet another figure after hearing the testimony of Defendant's expert witness when the sentencing hearing was re-convened. The Guidelines provide for an increase in the offense level for tax loss in tax crimes

---

[14]The district court used the 2005 edition of the Guidelines Manual, apparently without objection. Neither party challenges this decision on appeal.

according to a scale along which each step includes a monetary range. As pertinent to this case, the range is from $2.5 million to $7 million. USSG § 2T4.1(J). All estimates provided by the government were above $2.5 million, with the lowest being $2,785,490.74. On this evidence, we cannot conclude that the district court clearly erred in finding that the tax loss exceeded $2.5 million.

Finally, Defendant alleges error in the district judge's imposition of a fine in excess of the guidelines range. We conclude that we must remand for the district court to explain the reasons for its decision on the fine.

Congress has decreed that a district judge must state the reason for the imposition of a particular sentence. 18 U.S.C. § 3553(c). The Guidelines recommended a fine of $12,500 to $125,000. USSG § 5E1.2(c)(3). The trial court imposed a fine on each count that was twice the upper limit of the recommendation, $250,000. The fine imposed in this case appears to be a variance (as opposed to a departure),[15] although we cannot be sure because of the district court's failure to explain the reasoning behind the amount of fine imposed.

In any event, we cannot review the reasonableness of this portion of the sentence in the absence of an explanation of the district court's reasoning. *See, e.g., United States v. Hildreth*, 485 F.3d 1120, 1127 n.2 (10th Cir. 2007). Accordingly, we must remand the case for the district court to provide an explanation for the fines imposed.

---

[15]The difference is explained in *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007).

### *Conclusion*

We affirm the convictions and the sentence except for the fines imposed. We remand to the district court for the sentencing judge to explain the reasons for the fines imposed.

IT IS SO ORDERED.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge